**POTLATCH FORESTS, INC., Plaintiff,**

v.

**Arthur H. HAYS, Commissioner of Labor, State of Arkansas, Defendant.**

**Arkansas State A.F.L.–C.I.O., International Woodworkers of America, A.F.L.–C.I.O., and Locals 5–332 and 5–484 of International Woodworkers of America, A.F.L.–C.I.O., Intervenors,**

**Equal Employment Opportunity Commission, an Agency of the United States, Amicus Curiae.**

**No. LR–69–C–233.**

United States District Court,
E. D. Arkansas, W. D.

Oct. 12, 1970.

Bill S. Clark, Little Rock, Ark., for plaintiff.

Joe Purcell, Atty. Gen., and Mike Wilson, Asst. Atty. Gen., of Arkansas, Little Rock, Ark., for defendant.

John P. Sizemore, Little Rock, Ark., for intervenors.

Stanley P. Hebert, Gen. Counsel EEOC, Russell Specter, Deputy Gen. Counsel, and David R. Cashdan, Atty., Washington, D.C., filed brief amicus curiae.

Memorandum Opinion

HENLEY, Chief Judge.

This is a suit in equity brought by Potlatch Forests, Inc., an Arkansas employer of both men and women covered by the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A., section 201 et seq., and by Title VII of the Civil Rights Act of 1964, 42 U.S.C.A., section 2000e et seq., against Arthur H. Hays, Commissioner of Labor for the State of Arkansas, wherein plaintiff seeks declaratory and injunctive relief with respect to Arkansas Act 191 of 1915, Ark.Stats., Ann., section 81–601.

The Arkansas statute with exceptions and exemptions not here pertinent provides in substance that female employees in industry must be paid time and one-half for all hours worked by them in excess of eight hours per day and in excess of forty-eight hours per week. Plaintiff asserts that the Arkansas requirement that daily overtime be paid to female employees has been superseded by the anti-discrimination provisions appearing in the 1964 Civil Rights Act, 42 U.S.C.A., section 2000e–2(e), that the Court should so declare,

and that the Arkansas Labor Commissioner should be enjoined from enforcing the Arkansas statute. Since plaintiff relies solely on the Supremacy Clause of the Constitution of the United States, Const., Art. VI, Clause 2, it is not necessary that a statutory court of three judges be convened. Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194; Wright On United States Courts, 2d Ed., section 50, p. 190.

The action was commenced on December 12, 1969. Thereafter certain labor organizations, hereinafter referred to collectively as the Union, sought and obtained leave to intervene on the side of the defendant. The Court also granted leave to the Equal Employment Opportunity Commission, established by 42 U.S.C.A., section 2000e–4, and the United States Department of Labor to file amicus curiae briefs. Such a brief has been filed by EEOC, but the Department of Labor filed no brief. There is no reason to believe, however, that the views of the Labor Department differ from those of EEOC.

The cause is now before the Court on a motion to dismiss filed by the Labor Commissioner, a motion for summary judgment filed by Potlatch, a similar motion filed by the original intervenors, and a pleading styled an "Answer" filed by the local union that was permitted to intervene in August of the current year.

Potlatch is largely engaged in Arkansas and probably elsewhere in the raising of timber, and the manufacture of lumber and wood products. As the Court understands, it has at least two plants in Arkansas, one at Warren in Bradley County, and another at or near Prescott in Nevada County. It employs both men and women some of whom perform the same tasks. Potlatch is clearly an industry affecting interstate commerce, and the employees with whom the Court is concerned are engaged either in interstate commerce or in the production of goods for such commerce. Those employees are employed in daily shifts of more than eight hours duration and for workweeks in excess of forty hours per week.

Under the provisions of the Fair Labor Standards Act Potlatch is required to pay all of its employees engaged in interstate commerce or in the production of goods for interstate commerce the statutory minimum wage called for by 29 U.S.C.A., section 206, and it is required by 29 U.S.C.A., section 207, to pay overtime compensation to all of such employees who are employed for more than forty hours in any one week. Unlike the Arkansas statute before the Court, the federal statute does not require that daily overtime be paid to any employee.

Potlatch is not only subject to the general provisions of the Fair Labor Standards Act; it is specifically subject to the 1963 amendment to 29 U.S.C.A., section 206, which amendment is generally known as the Equal Pay Act, Act of June 10, 1963, P.L. 88–38, 77 Stat. 56, which Act is now codified as 29 U.S.C.A., section 206(d). That Act in substance prohibits discrimination in rates of pay based solely on employee sex. The Act provides specifically that inequalities in rates of pay cannot be eliminated by lowering the higher rate; there must be an increase in the lower.

Since the employees of Potlatch were and are covered by the Fair Labor Standards Act, and since that Act requires overtime compensation for all hours in excess of forty worked during a given workweek, regardless of how many hours a day are worked, it is clear that the impact of the Arkansas statute on Potlatch, and on other Arkansas employers similarly situated, is limited to daily overtime hours worked during the first forty hours of each workweek; after a woman has worked forty hours during a given workweek, the Fair Labor Standards Act simply takes over and the Arkansas statute becomes functus officio.

Apparently, Potlatch has always paid its female employees in accordance with both the Arkansas statute and the Fair Labor Standards Act. It seems, how-

ever, that prior to 1969 it did not pay daily overtime to its male employees. In that year, according to the brief filed by EEOC, the Labor Department took the position that under the Equal Pay Act, supra, Potlatch was required to pay daily overtime to its male employees as well as to its female employees, and it seems that Potlatch acceded to that position.

In August 1970 the Union filed a charge of discrimination against Potlatch with the Commission alleging in substance that Potlatch was not in fact paying its male employees the daily overtime being paid to women and was thereby violating the anti-discrimination provisions of the Civil Rights Act of 1964. That charge is still pending before the Commission, and no one seems to be able to predict when a decision will be rendered. As far as the Court is advised, the Secretary of Labor has never filed any suit against Potlatch alleging any violations of the Equal Pay Act or of any other provisions of the Fair Labor Standards Act.

The complaint in this case alleges among other things:

"6. Under and pursuant to Title VII of the Civil Rights Act of 1964 (42 USC Section 2000e–2(e)), Plaintiff is prohibited from discriminating against an employee on the basis of one's sex unless sex is a bona fide occupational qualification reasonably necessary to the normal operation of Plaintiff's business. Plaintiff is therefore required to pay male employees performing similar duties the amount of premium pay paid to such female employees pursuant to the Arkansas Act set forth in Exhibit A. Based on the number of employees affected, their shifts and hours of work, compliance by Plaintiff in this regard exceeds the sum of $10,000 exclusive of interest and costs.

"7. The provision of Act 191 of 1915 as amended requiring Plaintiff to pay female employees one and one half (1½) times the regular rate of pay for all hours worked over eight

(8) in any one working day, does not create a bona fide occupational qualification within the meaning of Section 703 of Title VII of the Civil Rights Act of 1964 (42 USC Section 2000e–2(e)). Such provision is therefore discriminatory on account of sex and is contrary to and inconsistent with the provisions of Title VII of the Civil Rights Act of 1964, above referred to. By reason of the supremacy clause of the United States Constitution the federal government has therefore preempted the Arkansas Act and has also preempted Defendant's authority to enforce the Act.

"8. The enforcement of the Arkansas Act will frustrate, hinder and prevent national uniform operation of federal legislation intended by Congress to provide a uniform solution to a national problem.

"9. Plaintiff has no adequate remedy at law, and unless this Court enters a Judgment declaring the Arkansas Act void and invalid and restrains and enjoins Defendant, as hereinafter prayed, Plaintiff will either be compelled to bear the heavy burden and cost of complying with this preempted and void law or suffer penalties as hereinbefore alleged."

The defendant, the Union, and EEOC deny that there is any conflict between the Arkansas statute and the federal labor legislation that has been mentioned and insist that the Arkansas statute is still viable. However, defendant and intervenors make some preliminary contentions that need to be noticed before the Court considers the basic controversy between the parties.

## I.

It is contended that the complaint does not tender a justiciable case or controversy between plaintiff, on the one hand, and the Labor Commissioner, on the other hand, that is within the jurisdiction of this Court. The argument is that Potlatch is in fact obeying the Arkansas statute, whether voluntarily or involuntarily, and that as long as it con-

tinues to do so, there will be no controversy between the original parties to the suit. The Court does not accept that contention.

The defendant Commissioner is the Arkansas official who is charged with the duty of enforcing Act 191 of 1915; through his counsel, the Attorney General of the State of Arkansas, he has advised the Court that he considers Act 191 still alive, and that he will enforce it. Violation of the statute is a misdemeanor punishable by a fine of not less than $25 nor more than $100. Each day of violation constitutes a separate offense, Ark.Stats., section 81–618. And presumably a violation is committed with respect to each woman who is not paid in accordance with the statute.

■ The Court thinks that the dispute between the plaintiff and the defendant with respect to the continued viability of the Arkansas statute presents a justiciable controversy, and that the amount in controversy is in excess of $10,000 exclusive of interest and costs. Thus the Court has jurisdiction under 28 U.S.C.A., section 1331.

■ That plaintiff can avoid the criminal sanctions of the Act by continuing to obey does not mean that it is not entitled to have the issue between it and the Commissioner resolved at this time.

■ While federal courts are always reluctant to enjoin the commencement of State criminal proceedings, there is no doubt that they have the power to do so in proper cases, and where the constitutionality of a State criminal statute is involved, one affected by that statute is not necessarily required to place himself in the position of a defendant in a criminal case in order to test the statute's validity. See e. g. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22; Evers v. Dwyer, 358 U.S. 202, 79 S.Ct. 178, 3 L. Ed.2d 222; Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 79 L. Ed. 1322; Terrace v. Thompson, 263 U. S. 197, 44 S.Ct. 15, 68 L.Ed. 255. That such a person may not prevail ultimately in a suit such as this has no bearing on the Court's jurisdiction to entertain the suit.

Apart from the fact that plaintiff may be subjected to multiple prosecutions if it violates Act 191, plaintiff's obedience to it entails most serious financial consequences if plaintiff is in fact required by the federal legislation that has been mentioned to pay daily overtime to its male employees as well as to its female workers.

## II.

Intervenors claim that the Court lacks jurisdiction because the controversy is within the "primary jurisdiction" of EEOC. Alternatively, intervenors say that this Court in the exercise of its discretion should withhold action until the agency disposes of the discrimination charge pending before it. In its brief EEOC makes no such arguments, and the Court is satisfied that the alternative contentions of the Union are without merit.

In the first place, EEOC has no "primary jurisdiction" in the sense that such jurisdiction has been vested in some federal agencies such as, for example, the Interstate Commerce Commission and the National Labor Relations Board. While 42 U.S.C.A., sections 2000e–4 and 2000e–5 entrust certain important functions to the Commission in connection with the administration and enforcement of Title VII of the Act, those functions are not "adjudicatory" in the conventional sense of that term. The functions of the Commission are to investigate complaints of discrimination in employment, to eliminate insubstantial or frivolous complaints, to undertake to conciliate substantial grievances, and, conciliation failing, to give clearances to aggrieved persons to file suits in federal courts. The Commission does not decide whether a given employer has discriminated against an employee or group of employees, but only whether there is reasonable cause to believe that discrimination has been practiced.

Nor is the controversy between Potlatch and the Labor Commissioner in any sense within the jurisdiction of EEOC. This is not a "discrimination case." No one contends that the payment of daily overtime to women discriminates against them. The Labor Commissioner is not a party to the proceeding before the agency and has no interest in the outcome of that proceeding. The issue as to discrimination against male employees is not before this Court at this time.

■ As far as the Court's discretion is concerned, it may be said that when the Court granted permission to EEOC to file a brief herein, it recognized that the agency's view as to the meaning and effect of the Civil Rights Act in present context might be entitled to weight, and that its view as to the present status of the Arkansas statute might be helpful. The Court now has the benefit of those views which are to the effect that as a matter of federal law Potlatch must pay its male employees daily overtime and that there is no conflict between federal law and the Arkansas statute. The Court will proceed, therefore, to the merits.

### III.

Insofar as here pertinent, 42 U.S.C.A., section 2000e–2 is as follows:

"(a) It shall be unlawful employment practice for an employer—

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

"(2) to limit, segregate, or classify his employees in any way which deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

\* \* \* \* \* \*

"(e) Notwithstanding any other provision of this subchapter, (1) it shall not be an unlawful employment practice for an employer to hire and employ employees \* \* \* on the basis of his religion, sex, or national origin in those certain instances where religion, sex, or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise. \* \* \* "

The Arkansas statute was passed, of course, for the purpose of protecting women from industrial exploitation and to prevent evils which the Legislature in 1915 thought inhered in the employment of women for long hours. The State constitutionality of the statute was upheld in State v. Crowe, 130 Ark. 272, 197 S.W. 4, notwithstanding the fact that the Arkansas Supreme Court recognized that the statute was "discriminatory."

The Arkansas statute is comparable to statutes enacted during the same general period by a number of States, but it differs in an important respect from the protective legislation adopted by some States which have *prohibited* the employment of women in certain tasks or for hours deemed to be excessive. The Arkansas statute does not forbid an employer from hiring women for more than eight hours a day or forty-eight hours a week; but, in the Court's estimation, the purpose of the statute was to discourage such employment by commanding premium pay for it.

Prior to 1964 if an Arkansas employer did not want to pay daily overtime to women, he was not required to work them overtime on either a daily or a weekly basis; indeed, he was not required to hire women at all. Today, by virtue of Title VII of the Civil Rights Act of 1964 he cannot refuse to hire women on the basis of their sex unless sex "is a bona fide occupational qualification reasonably necessary to the normal operation" of his business or enterprise. Moreover, since the opportunity

to earn overtime compensation may reasonably be considered a privilege of modern industrial employment, it seems clear that an Arkansas employer must give to women the same opportunities with respect to overtime that he gives to men.

The plaintiff does not ask the Court to adjudicate that the Civil Rights Act does not require the payment of daily overtime to men as long as such overtime is being paid to women; indeed, plaintiff concedes that such a requirement exists and in so doing takes the same position as does EEOC.[1] Nor does the plaintiff contend that sex has anything to do with a person's ability to work more than eight hours a day.

The position of the plaintiff is simply that as far as Act 191 is concerned the Civil Rights Act has preempted the field, and that enforcement of the 1915 statute "will frustrate, hinder and prevent national uniform operation of federal legislation intended by Congress to provide a uniform solution of a national problem."

Whether the concession of Potlatch that under federal law it must pay daily overtime to male employees as long as it pays it to female employees is correct as an abstract proposition the Court does not now decide. An argument to the contrary could be made that would be plausible at least. But, the concession has been made, presumably advisedly; it conforms to the view taken by EEOC; and the Court will accept it for purposes of this case.

Plaintiff cannot prevail on the strength of the "pre-emption doctrine" proper. That is true because when Congress adopted Title VII of the Civil Rights Act, it expressly disclaimed any preemptive intent, 42 U.S.C.A., section 2000e–7, and repeated the disclaimer in more general terms in 42 U.S.C.A., section 2000h–4. Thus, plaintiff must stand or fall on the proposition that the Arkansas statute conflicts with the Civil Rights Act.

General Counsel for EEOC has this to say in its brief about a conflict between federal and State legislation.

"The standards for determining whether a state statute is invalid under the Supremacy Clause, because of a conflict with a federal statute, are well established. The validity of the state statute 'depends upon whether the State regulation "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" * * *.' Florida Lime and Avocado Growers, Inc. v. Paul, 373 U.S. 132, 141 [83 S.Ct. 1210, 10 L.Ed.2d 248] * * *. ' "Unless the state law in terms or in its practical administration, conflicts with the Act of Congress, or plainly and palpably, infringes its policy; Southern Pacific Co. v. State of Arizona, ex rel. Sullivan, 325 U.S. 761, 766 [65 S.Ct. 1515, 89 L.Ed. 1915] * * *, the Supremacy Clause is not violated." ' Snell v. Wyman, 281 F.Supp. 853, 868 (S.C.N.Y.1968), affirmed 393 U.S. 23 [323] [89 S.Ct. 553, 21 L.Ed.2d 511]. To hold that a state statute 'is invalid under the Supremacy Clause, we must be able to conclude that the purpose of the federal statute would to some extent be frustrated by the state statute.' Colorado Anti-Discrimination Commission v. Continental Air Lines, 372 U.S. 714, 722 [83 S.Ct. 1022, 10 L.Ed.2d 84] (1963)."

This Court cannot quarrel with that statement and might add to it the observations that conflict between federal and State legislation are not to be presumed, and that both bodies of legislation should be construed, if possible, so as to avoid conflicts between them.

In a number of "sex discrimination" cases decided under the Civil Rights Act State statutes or company rules prohibiting the employment of women in cer-

---

1. EEOC asserts that the payment of daily overtime to male employees of Potlatch is required by the Equal Pay Act of 1963, supra, as well as by the Civil Rights Act. The Court finds it unnecessary to appraise that assertion in this case.

tain tasks or beyond certain hours have been held invalid. Where State statutes have been involved, the basis of the invalidation has been the Supremacy Clause. Bowe v. Colgate-Palmolive Co., 7 Cir., 416 F.2d 711; Weeks v. Southern Bell Telephone & Tel. Co., 5 Cir., 408 F. 2d 228; Richards v. Griffith Rubber Mills, D.C.Or., 300 F.Supp. 338; Rosenfeld v. Southern Pacific R. Co., C.D.Cal., 293 F.Supp. 1219. The most recent case along that line of which the Court knows is Caterpillar Tractor Co. v. Grabiec, S.D.Ill.1970, 317 F.Supp. 1304. The rationale of those decisions is that the protective legislation in question was based upon a chivalrous or paternalistic attitude toward women in employment which is irrelevant in a day and age characterized by strong movements for the "liberation of women."

█ It is clear that a State statute which forbids the hiring of a woman for a particular job or under certain conditions cannot stand in the face of a federal statute that says that she must be hired for that job or in those conditions if she is otherwise qualified and wants to do the work. It has been seen, however, that the Arkansas statute is not "prohibitory" in nature. For that reason the cases above cited are of no real help to plaintiff.

The purpose of Congress in adopting Title VII of the Civil Rights Act was to prohibit discrimination in employment and its incidents. The prohibition was intended originally to be limited to discrimination based on race, color, religion, or national origin; "sex" was included at the last minute and probably without much Congressional deliberation, Phillips v. Martin Marietta Corporation, 5 Cir., 411 F.2d 1, 3, rehearing denied 416 F.2d 1257. In any event, discrimination on the basis of sex is now prohibited along with the other types of discrimination named in the Act.

Discrimination with respect to pay between two classes of employees can be eliminated in either one of two ways. One class can be paid more or the other class can be paid less. It has been pointed out that such a Procrustean approach was expressly forbidden in the Equal Pay Act which requires that differentials be eliminated by raising the lower rate of pay to the level of the higher.

As far as Act 191 of 1915 is concerned, an employer can comply with it and with the Civil Rights Act by paying daily overtime to both men and women, as Potlatch contends that it is in fact doing. The Arkansas statute does not say that women must be paid more than men; it simply says that they must be paid daily overtime without making a similar requirement as to men.

While Title VII of the Civil Rights Act was not passed to raise wages generally, it certainly does not "impede" or "frustrate" the purpose of the Act to require an Arkansas employer to eliminate discrimination by paying its male employees more than it would pay them ordinarily in order to equalize their pay with that of women.

█ Granting the validity of plaintiff's concession that has been mentioned, the Court is constrained to agree with the defendant and the Union and with EEOC that there is no conflict between the State and federal statutes, and that plaintiff is not entitled to relief.

The financial burden thus placed upon Potlatch may seem onerous, but federal labor legislation enacted over the last thirty odd years has placed many onerous burdens on employers. It is open to Arkansas employers generally to seek repeal of Act 191 of 1915. It is open to Potlatch as an individual employer to rearrange its working schedules so that nobody works more than eight hours a day until all employees have worked their first forty hours in a workweek.

Let the complaint be dismissed.