Leah **ROSENFELD**, Appellee,

v.

**SOUTHERN PACIFIC COMPANY**, a Delaware corporation, Appellant.

Leah **ROSENFELD**, Appellee,

v.

**SOUTHERN PACIFIC COMPANY**, a Delaware corporation, et al., Appellants.

Nos. 23983, 23984.

United States Court of Appeals,
Ninth Circuit.

June 1, 1971.

Chambers, Circuit Judge, dissented and filed opinion.

Jefferson Frazier, Deputy Atty. Gen., (argued), Evelle J. Younger, Cal. Atty. Gen., Jay S. Linderman, Deputy Atty. Gen., San Francisco, Cal., for appellants.

Frank G. Wells (argued), of Gang, Tyre & Brown, Hollywood, Cal., Louis M. Brown, Los Angeles, Cal., Bodle, Fogel, Julber & Reinhardt, Los Angeles, Cal., Schoene & Kramer, Washington, D. C., for appellee.

David W. Zugschwerdt, Washington, D. C., Charles P. Scully, Donald C. Carroll, San Francisco, Cal., for amicus curiae.

Before CHAMBERS, HAMLEY and KILKENNY, Circuit Judges.

HAMLEY, Circuit Judge:

Leah Rosenfeld brought this action against Southern Pacific Company pursuant to section 706(f) of Title VII of the Civil Rights Act of 1964 (Act), 42 U.S.C. § 2000e–5(f).[1] Plaintiff, an employee of the company, alleged that in filling the position of agent-telegrapher at Thermal, California, in March, 1966, Southern Pacific discriminated against her solely because of her sex, by assigning the position to a junior male employee.

Plaintiff originally asked for injunctive relief and damages specifically related to the Thermal incident.[2] However, in a pretrial order thereafter entered, supplementing the pleadings, issues were posed which went beyond the circumstances of that incident and which could result in determinations affecting the company's general labor policy respecting the employment of women.[3]

The court permitted the State of California to intervene because of its interest in defending the validity of the state's labor laws. Following extensive proceedings, a summary judgment was entered, as summarized in the margin.[4] It will be noted that while the judgment is generally favorable to plaintiff, the court did not award damages against the

1. Transportation Communication Employees Union was also named a defendant. However, there has been no appeal from the summary judgment entered in favor of that defendant and no issue involving it is before us on this appeal.

2. Specifically, plaintiff sought (1) an order enjoining Southern Pacific from engaging in the alleged acts of discrimination against her, (2) an order requiring the company to assign her to the Thermal position, and (3) damages equal to the compensation plaintiff lost because she was not assigned to the Thermal position.

3. For example, issue of law (xxvi) reads: "Whether Sections 1251, 1252, 1254, 1350 and 1350.5 of the California Labor Code are contrary to § 703 of the Civil

Rights Act of 1964 (42 U.S.C. § 2000e–2);"

4. The judgment, reported at 293 F.Supp. 1219, 1226–1227 (C.D.Cal.1968),
   1. declares that sections 1171 through 1256, and 1350 through 1357, of the California Labor Code, or any administrative regulations issued thereunder, insofar as they discriminate between men and women, are contrary to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e through 2000e–15;
   2. declares that sections 1171 through 1256, and 1350 through 1357, of the California Labor Code, or any administrative regulations issued thereunder, do not create or constitute a bona

company. Southern Pacific and the State of California appeal.

At the time of oral argument in this court it was disclosed that, on July 15, 1968, while the case was pending in the district court, Southern Pacific closed its agency at Thermal. We therefore remanded the cause to the district court for the limited purpose of considering whether this case became moot because of the closing of the Thermal agency.

■ In the remanded proceedings the district court entered findings of fact and conclusions of law leading it to hold that the case is not moot and that the judgment under review is in full force and effect. Southern Pacific and the State of California have appealed from this district court determination and, even in the absence of such a challenge, it would be our responsibility to rule upon the question of mootness. A federal court is without power to decide moot questions or to give advisory opin-

ions which cannot affect the rights of the litigants in the case before it. Local No. 8–6, Oil, Chemical and Atomic Workers, etc. v. Missouri, 361 U.S. 363, 367, 80 S.Ct. 391, 4 L.Ed.2d 373 (1960).

■ Plaintiff did not originally seek a declaratory judgment or injunctive relief pertaining to general company employment practices pertaining to sex discrimination. But, as noted at the outset of this opinion, the issues were broadened in the pretrial order in such manner as to contemplate such general declaratory and possibly injunctive relief. Consistent therewith, the judgment entered, as summarized in note 4, grants extensive declaratory and injunctive relief not limited to the Thermal agency, and operates prospectively.

The findings and conclusions on remand disclose why the district court thinks the controversy extends beyond Thermal.[5] As before noted, the judgment under review reflects the same

fide occupational qualification within the meaning of section 703(e) of Title VII of the Civil Rights Act of 1964;

3. declares that Southern Pacific's action in refusing to grant plaintiff the agent-telegrapher position at Thermal constitutes discrimination against her solely on account of sex and is an unlawful employment practice within the meaning of section 703(a) of Title VII;

4. declares that any and all effects "of this Declaratory Judgment" shall be prospective from the date it becomes final;

5. decrees that at such time as the declaratory judgment becomes final, the following judgment shall be deemed entered:

(a) plaintiff shall be considered for any position sought by her with Southern Pacific without regard to her sex and without regard to any limitations imposed on employers in the employment of female employees under sections 1171 through 1256, and 1350 through 1357 of the California Labor Code, or any administrative regulations issued thereunder;

(b) Southern Pacific and its officers and agents, with respect to its employment practices involving Leah Rosenfeld are enjoined from relying upon, or acting under, the provisions of section

1171 through 1256, and 1350 through 1357, or any administrative regulations issued thereunder, insofar as the same discriminate between men and women.

6. orders that upon the judgment becoming final, the court shall retain jurisdiction to hear and determine all matters relating to charges by plaintiff that Southern Pacific's subsequent employment practices (a) constitute discrimination against plaintiff solely because of her sex, or (b) constitute a limitation, segregation and classification of Southern Pacific's employees in such way that it deprives or tends to deprive plaintiff of employment opportunities or adversely affects her status as an employee solely because of her sex.

5. Said the court in its conclusions of law on remand:

"4. It is established that within the scope of plaintiff's seniority, Southern Pacific may have other jobs for which she might otherwise qualify and which require the lifting of weights in excess of the limits set for women by California law. Were it not for such California law, she would be able to bid for and receive these other jobs in the future.

"5. There is nothing in the record to indicate that Southern Pacific would not repeat the discriminatory wrongs in the

analysis of the controversy and provides relief designed to meet the problem. If the case is now declared moot this will not eradicate the controversy, it will simply remain undecided.

In essence, the mootness problem here is like that dealt with in Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L. Ed.2d 1 (1969). In that case, candidates in the general elections of 1968 challenged the validity of Illinois statutory procedures for nominating independent candidates. A three-judge district court dismissed the action for failure to state a cause of action, citing MacDougall v. Green, 335 U.S. 281, 69 S.Ct. 1, 93 L.Ed. 3 (1948). By the time the *Moore* case reached the Supreme Court, the 1968 general elections were a matter of history. For this reason appellees moved the cause to be dismissed for mootness. Denying this motion the Supreme Court said:

"But while the 1968 election is over, the burden which MacDougall v. Green, *supra,* allowed to be placed on the nomination of candidates for state-wide offices remains and controls future elections, as long as Illinois maintains her present system as she has done since 1935. The problem is therefore 'capable of repetition, yet evading review,' Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U.S. 498, 515, 31 S. Ct. 279, 283, 55 L.Ed. 310. The need for its resolution thus reflects a continuing controversy in the federal-state area where our 'one man, one vote' decisions have thrust." (394 U. S. at 816, 89 S.Ct. at 1494).

Similarly here, the burden which Southern Pacific's general labor policy

and the state statutes in question place on Southern Pacific's employment of women remains and controls the company's future work assignments. Moreover, the fact that this cause arose under Title VII of the Civil Rights Act of 1964 provides additional support for the view that the action has not been mooted by the closing of the Thermal agency. That Title is so designed that, in the attainment of its objectives, the administrative agency primarily renders a conciliation service. The ultimate sanction is judicial enforcement initiated by individuals who are aggrieved. Section 706(e) of the Act, 42 U.S.C. § 2000e–5(e). In many such cases, including this one, declaratory and injunctive relief is sought, the need for which is not necessarily dependent upon proof that a particular discrimination has continued.

Thus while the resulting litigation is private in form, it is intended to effectuate the policies of the legislation. So considered, such a suit constitutes more than the assertion of a private claim and, consequently, it is not necessarily defeated by the disappearance of the particular grievance which gave rise to the action. The controverted issue of unlawful employer discrimination remains; it may, and should be, judicially resolved and relief granted or denied. *See* Jenkins v. United Gas Corp., 400 F.2d 28, 30–33 (5th Cir. 1968).

The discontinuance of the particular grievance which gave rise to this action may call for a denial of some of the relief requested. *See* Parham v. Southwestern Bell Tel. Co., 433 F.2d 421, 429 (8th Cir. 1970). It does not moot the litigation.

future; in fact, they are compelled to do so by existing California law.

"6. At the time the Summary Judgment was granted, everyone presumed that the Thermal station was in operation. The plaintiff did not contend that she be given the job of Agent-Telegrapher at Thermal, but, rather, requested that Southern Pacific award her the next position to which she was entitled

without regard to her sex. It was not contended that Southern Pacific should be required to discharge the male employee awarded the Agent-Telegrapher position at Thermal and substitute the plaintiff. It was immaterial whether the Thermal position was open, and the Summary Judgment was explicitly made prospective only."

On the merits, Southern Pacific argues that it is the company's policy to exclude women, generically, from certain positions. The company restricts these job opportunities to men for two basic reasons: (1) the arduous nature of the work-related activity renders women physically unsuited for the jobs; (2) appointing a woman to the position would result in a violation of California labor laws and regulations which limit hours of work for women and restrict the weight they are permitted to lift. Positions such as that of agent-telegrapher at Thermal fall within the ambit of this policy. The company concludes that effectuation of this policy is not proscribed by Title VII of the Civil Rights Act due to the exception created by the Act for those situations where sex is a "bona fide occupational qualification."

While the agent-telegrapher position at Thermal is no longer in existence, the work requirements which that position entailed are illustrative of the kind of positions which are denied to female employees under the company's labor policy described above. During the harvesting season, the position may require work in excess of ten hours a day and eighty hours a week.[6] The position requires the heavy physical effort involved in climbing over and around boxcars to adjust their vents, collapse their bunkers and close and seal their doors. In addition, the employee must lift various objects weighing more than twenty-five pounds and, in some instances, more than fifty pounds.

The critical question presented by this argument is whether, consistent with Title VII of the Civil Rights Act of 1964, the company may apply such a labor policy. The pertinent provision of Title VII is section 703(a) of the Act, 42 U.S.C. § 2000e–2(a), reading as follows:

"Sec. 703(a) It shall be an unlawful employment practice for an employer—

"(1) to fail or refuse to hire or to discharge any individual or otherwise

to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

"(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

Southern Pacific's employment policy under which, for example, it has denied Mrs. Rosenfeld an employment assignment on the ground that women, considered generically, are not physically or biologically suited for such work, results in distinguishing employees, thus discriminating against some because of sex, within the meaning of subsection (1) of this provision. It also constitutes a limitation upon, segregation of, or classification of the company's employees in a way which would deprive or tend to deprive an individual of employment opportunities because of such individual's sex, within the meaning of subsection (2) of the quoted section.

There is therefore no doubt that the type of discrimination against women broadly prohibited by Title VII occurs under Southern Pacific's personnel policy. However, appellants contend that section 703(e) of the Act, 42 U.S.C. § 2000e–2(e), provides specific authority for Southern Pacific's described employment policy. This subsection reads:

"(e) Notwithstanding any other provision of this subchapter, (1) it shall not be an unlawful employment practice for an employer to hire and employ employees, * * * on the basis of his religion, sex, or national origin in those certain instances where religion, sex, or national origin is a bona fide occupational qualifica-

---

**6.** It was, indeed, this opportunity to earn overtime pay that made this position attractive to plaintiff.

tion reasonably necessary to the normal operation of that particular business or enterprise, * * *"

We deal first with Southern Pacific's argument that the strenuous physical demands of the position, both as to the hours of work and the physical activity required, render sex "a bona fide occupational qualification [hereinafter BFOQ] reasonably necessary to the normal operation of that particular business or enterprise, * * *" The company contends that under the formulation put forward by the Fifth Circuit in Weeks v. Southern Bell Tel. & Tel. Co., 408 F. 2d 228 (5th Cir. 1969), if Southern Pacific could prove it "had reasonable cause to believe, that is, a factual basis for believing, that all or substantially all women would be unable to perform safely and effectively the duties of the job involved," Id. at 235, it could properly rely on the BFOQ exception as a legal basis for excluding women generically from position such as that of agent-telegrapher at Thermal. Southern Pacific contends that it should not have been denied the opportunity to present such proof by the mechanism of summary judgment.

The *Weeks* case involved, among other issues, a challenge to a company-imposed weight-lifting restriction for female employees. The case had gone to trial below. The Fifth Circuit thus decided only that the company had not met the burden of proof for establishing a BFOQ below. There was no need for it to consider the basic issue of whether employment restrictions based upon characterizations of a sex group's physical capabilities are, by their nature, capable of fitting within the BFOQ category. Since this case reaches us after summary judgment, we must decide this question.

■■■ The crucial language of section 703(e), 42 U.S.C. § 2000e–2(e), quoted above, provides an exception to Title VII's prohibition of discrimination when "sex * * * is a bona fide oc-

cupational qualification." The Equal Employment Opportunity Commission (Commission) has interpreted the particular exception to some extent in its published Guidelines. In pertinent part, the Guidelines provide that:

"(a) The Commission believes that the bona fide occupational qualification exception as to sex should be interpreted narrowly. * * *

"(1) The Commission will find that the following situations do not warrant the application of the bona fide occupational qualification exception:

* * * * * *

"(ii) The refusal to hire an individual based on stereotyped characterizations of the sexes. Such stereotypes include, for example, that men are less capable of assembling intricate equipment; that women are less capable of aggressive salesmanship. The principle of non-discrimination requires that individuals be considered on the basis of individual capacities and not on the basis of any characteristics generally attributed to the group.

* * * * * *

"(2) Where it is necessary for the purpose of authenticity or genuineness, the Commission will consider sex to be a bona fide occupational qualification, e. g., an actor or actress." 29 C.F.R. § 1604.1.

In the case before us, there is no contention that the sexual characteristics of the employee are crucial to the successful performance of the job, as they would be for the position of a wet-nurse, nor is there a need for authenticity or genuineness, as in the case of an actor or actress. 29 C.F.R. § 1604.1(a) (2). Rather, on the basis of a general assumption regarding the physical capabilities of female employees, the company attempts to raise a commonly accepted characterization of women as the "weaker sex" to the level of a BFOQ. The personnel policy of Southern Pacific here in question is based on "character-

istics generally attributed to the group" of exactly the same type that the Commission has announced should not be the basis of an employment decision. 29 C.F.R. § 1604.1(a) (1) (ii). Based on the legislative intent and on the Commission's interpretation, sexual characteristics, rather than characteristics that might, to one degree or another, correlate with a particular sex, must be the basis for the application of the BFOQ exception. *See* Developments in the Law—Title VII, 84 Harv.L.Rev. 1109, 1178–1179 (1971). Southern Pacific has not, and could not allege such a basis here, and section 703(e) thus could not exempt its policy from the impact of Title VII. There was no error in the granting of summary judgment on this issue.

▇▇ The premise of Title VII, the wisdom of which is not in question here, is that women are now to be on equal footing with men. Weeks v. Southern Bell Tel. & Tel. Co., 408 F.2d 228, 236 (5th Cir. 1969). The footing is not equal if a male employee may be appointed to a particular position on a showing that he is physically qualified, but a female employee is denied an opportunity to demonstrate personal physical qualification. Equality of footing is established only if employees otherwise entitled to the position, whether male or female, are excluded only upon a showing of individual incapacity. *See* Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 718 (7th Cir. 1969). This alone accords with the Congressional purpose to eliminate subjective assumptions and traditional stereotyped conceptions regarding the physical ability of women to do particular work. *See* Weeks v. Southern Bell Tel. & Tel. Co., 408 F.2d 228, 235–236 (5th Cir. 1969); Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 717 (7th Cir. 1969). *See also*, Shultz v. First Victoria Nat'l Bank, 420 F.2d 648, 656 (5th Cir. 1969), (interpreting the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1)).

But the company points out that, apart from its intrinsic merit, its policy is compelled by California labor laws. One of the reasons Mrs. Rosenfeld was refused assignment to the Thermal position, and would presumably be refused assignment to like positions, is that she could not perform the tasks of such a position without placing the company in violation of California laws. Not only would the repeated lifting of weights in excess of twenty-five pounds violate the state's Industrial Welfare Order No. 9–63, but for her to lift more than fifty pounds as required by the job would violate section 1251 of the California Labor Code. Likewise, the peak-season days of over ten hours would violate section 1350 of the California Labor Code.

It would appear that these state law limitations upon female labor run contrary to the general objectives of Title VII of the Civil Rights Act of 1964, as reviewed above, and are therefore, by virtue of the Supremacy Clause, supplanted by Title VII. However, appellants again rely on section 703(e) and argue that since positions such as the Thermal agent-telegrapher required weight-lifting and maximum hours in excess of those permitted under the California statutes, being a man was indeed a bona fide occupational qualification. This argument assumes that Congress, having established by Title VII the policy that individuals must be judged as individuals, and not on the basis of characteristics generally attributed to racial, religious, or sex groups, was willing for this policy to be thwarted by state legislation to the contrary.

We find no basis in the statute or its legislative history for such an assumption. Section 1104 of the Act, 42 U.S.C. § 2000h–4, provides that nothing contained in the Act should be construed as indicating an intent to occupy the field in which the Act operates, to the exclusion of State laws or the same subject matter, nor be construed as invalidating any provision of state law " * * * unless such provision is inconsistent

with any of the purposes of this Act, or any provision thereof." This section was added to the Act to save state laws aimed at preventing or punishing discrimination, and as the quoted words indicate, not to save inconsistent state laws. (H.R.Rep. No. 914, 88th Cong., 1st Sess. [1963], additional views of Hon. George Meader).

Still more to the point is section 708 of the Act, 42 U.S.C. § 2000e–7, which provides that nothing in Title VII shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future state law " \* \* \* other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this title." This section was designed to preserve the effectiveness of state antidiscrimination laws (110 Cong.Rec. 7243, 12721 [1964], comments of Senators Case and Humphrey).[7]

The Commission, created by the provisions of Title VII of the Act,[8] through its published Guidelines and Policy Statements has, albeit after considerable hesitation, taken the position that state "protective" legislation, of the type in issue here, conflicts with the policy of non-discrimination manifested by Title VII of the Act. On August 19, 1969, the Commission revoked a portion of its Guidelines on Discrimination because of Sex, formerly appearing as 29 C.F.R. § 1604.1(a) (3), (b) and (c), and inserted a new subsection (b), quoted in the margin.[9] It is implicit in this Commission pronouncement that state labor laws inconsistent with the general objectives of the Act must be disregarded. The Supreme Court has recently observed that the administrative interpretation of the Act by the enforcing agency "is entitled to great deference.". Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). *See also*, Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).[10]

7. The legislative history is replete with statements making it clear that Congress was specifically aware that Title VII would undercut many state labor laws. See 110 Cong.Rec. 2577–2578, 2580, 2583, 2732 (1964).

8. See Local No. 104, Sheet Metal Workers, etc. v. Equal Employment Opportunity Commission, 439 F.2d 237 (9th Cir., 1971), which describes the functioning of this Commission.

9. "(b) (1) Many States have enacted laws or promulgated administrative regulations with respect to the employment of females. Among these laws are those which prohibit or limit the employment of females, e. g., the employment of females in certain occupations, in jobs requiring the lifting or carrying of weights exceeding certain prescribed limits, during certain hours of the night, or for more than a specified number of hours per day or per week.
   "(2) The Commission believes that such State laws and regulations, although originally promulgated for the purpose of protecting females, have ceased to be relevant to our technology or to the expanding role of the female worker in our economy. The Commission has found that such laws and regulations do not take into account the ca-

pacities, preferences, and abilities of individual females and tend to discriminate rather than protect. Accordingly, the Commission has concluded that such laws and regulations conflict with Title VII of the Civil Rights Act of 1964 and will not be considered a defense to an otherwise established unlawful employment practice or as a basis for the application of the bona fide occupational qualification exception." 29 C.F.R. § 1604.1(b).

10. In the *Griggs* case, Chief Justice Burger, speaking for the Court, also pointed out that it is immaterial that the state laws in question, or the employer's labor policy, were not enacted or prescribed with an intent to discriminate. Said the Court:
    "Under the Act, practices, procedures, or tests neutral on their face, and even neutral in terms of intent, cannot be maintained if they operate to 'freeze' the status quo of prior discriminatory employment practices."
    " \* \* \* but good intent or absence of discriminatory intent does not redeem employment procedures or testing mechanisms that operate as 'built-in headwinds' for minority groups. and are unrelated to measuring job capability." 401 U.S. at 430, 91 S.Ct. at 853.

■ We have considered the meaning which appellants would ascribe to BFOQ, as provided for in the Act. We conclude, however, that the Commission is correct in determining that BFOQ establishes a narrow exception inapplicable where, as here, employment opportunities are denied on the basis of characterizations of the physical capabilities and endurance of women, even when those characteristics are recognized in state legislation.

Under the principles set forth above, we conclude that Southern Pacific's employment policy is not excusable under the BFOQ concept or the state statutes. We leave undecided the questions of this kind which may arise concerning the varying employment policies of other employers under circumstances unlike those of the present case.

In the district court one of the company's defenses was that of good faith reliance upon the Commission's Guidelines then in effect. This defense was relevant to plaintiff's prayer for damages. While the district court did not award damages, it did find that the company did not rely on any written interpretation or opinion of the Commission, and concluded that the company "discriminated" against plaintiff solely because of her sex by refusing to assign her to the Thermal position.

In our opinion the finding on the question of reliance is unnecessary to the disposition of the cause and, in any event, should not have been entered without according Southern Pacific an evidentiary hearing. Moreover, in view of the California statutes referred to above, the conclusion that the company engaged in "discrimination" in refusing to assign plaintiff to the Thermal position carries with it no invidious connotation. Prior to a judicial determination such as evidenced by this opinion, an employer can hardly be faulted for following the explicit provisions of applicable state law.

We have examined the several procedural arguments advanced on this appeal, but are not persuaded that any of them require reversal. While the district court held that some state statutes not specifically challenged at the trial, are in conflict with Title VII, "insofar as the same discriminate between men and women," we think the quoted qualification renders the determination appropriate.

This decision is intended to have prospective application only and does not necessarily affect other pending litigation or contracts now in force.

Affirmed.

CHAMBERS, Circuit Judge (dissenting):

I think this case is moot. The fact that the decision is intended only to have prospective application confirms this view. (There is no indication that Southern Pacific eliminated the Thermal position purposely to moot this case.) That Congress did not intend the Civil Rights Act to abrogate traditional mootness concepts, thereby allowing what amount to advisory opinions, is clear from 42 U.S.C. § 2000e–5(g), which allows an employee damages measured by back pay. Legislatures often use this device in the private enforcement of public rights context to prevent defendants from easily mooting cases. In her complaint Rosenfeld sought as damages an amount that would compensate her for the wages (including overtime) she missed as a result of being denied the Thermal position. The court below found that she was not entitled to damages and she filed no cross appeal on this point. Thus, she has no monetary issue before this court.

With the Thermal position out of the way, there is nothing left for the judgment to operate on, no more "actual con-

**1228**

troversy." Rosenfeld still works for Southern Pacific as an agent telegrapher, and whether she might in the future seek a job that might be denied her by Southern Pacific rules and state law is pure speculation. The personal stake and degree of adverseness traditionally thought necessary to adequately sharpen legal issues are just not present here.

See generally Brockington v. Rhodes (1969), 396 U.S. 41, 90 S.Ct. 206, 24 L.Ed. 2d 209; Golden v. Zwickler (1969), 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113; United States v. W. T. Grant (1953), 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303; United States v. Alaska Steamship Co. (1920), 253 U.S. 113, 40 S.Ct. 448, 64 L.Ed. 808; Cash v. Swifton Land Corp. (6th Cir. 1970), 434 F.2d 569; Caldwell v. Craighead (6th Cir., 1970) 432 F.2d 213; Comment, Mootness on Appeal in the Supreme Court (1970), 83 Harv.L. Rev. 1672.

In this case it was disclosed at oral argument that counsel for the Equal Employment Opportunity Commission "selected" Mrs. Rosenfeld's counsel to bring the case. So the plaintiff's counsel makes a frontal attack. The Equal Employment Opportunity Commission comes in with a flank attack by way of an amicus brief.

The Southern Pacific takes a passive position of, "We do not care what the result is: Just tell us what to do." For the first time, the Southern Pacific gets really concerned with the case when it decides the trial court "overfound" in its findings. But that seems to be its only real concern.

This is not the stuff of which a real controversy is made. The issues should be decided in a case where both sides are really trying to win.

We should abstain from a "dead fall," which I think is a wrestling term.