Arthur H. HAYS, Commissioner of Labor, State of Arkansas, Appellee,

v.

POTLATCH FORESTS, INC., Appellant,

Arkansas State AFL–CIO, International Woodworkers of America, AFL–CIO, and Locals 5–332 and 5–484 of International Woodworkers of America, AFL–CIO, Intervenors.

Equal Employment Opportunity Commission, an Agency of the United States, Amicus Curiae.

No. 71–1456.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1972.

Decided July 20, 1972.

Bill S. Clark, Williamson, Williamson & Ball, Monticello, Ark., Smith, Williams, Friday, Eldredge & Clark, Little Rock, Ark., for appellant.

John T. Lavey, Arkansas Dept. of Labor, Little Rock, Ark., for Commissioner.

James E. Youngdahl, Little Rock, Ark., for intervenor.

Peter Janiak, Atty., Equal Employment Opportunity Commission, Washington, D. C., John de J. Pemberton, Jr., Acting Gen. Counsel, Julia P. Cooper, Chief, Appellate Section, Washington, D. C., for Equal Employment Opportunity Commission.

Before BREITENSTEIN,* Senior Circuit Judge, HEANEY and STEPHENSON, Circuit Judges.

HEANEY, Circuit Judge.

We are asked on this appeal to determine the validity of an Arkansas statute [1] which requires the appellant,

---

* Senior Circuit Judge, Tenth Judicial Circuit, sitting by special designation.

1. Ark.Stat.Ann. § 81–601. This case was previously remanded to the trial court for further consideration in light of Section 13 of Act 25 of the First Extraordinary Session of the Arkansas Legislature, 1968, and other related statutes. Potlatch Forests, Inc. v. Arthur H. Hayes, Commissioner of Labor, No. 20,-

Potlatch Forests, Inc., to pay its female employees time and a half for all hours worked in excess of eight hours per day.

Potlatch is an Arkansas employer of both male and female employees, who are admittedly covered by both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.,[2] and by the Equal Pay Act, 29 U.S.C. § 206(d). Potlatch brought this suit to have the Arkansas statute declared invalid and to have its enforcement enjoined because of the effect of the Civil Rights Act of 1964. The District Court dismissed Potlatch's complaint. Potlatch Forests, Inc. v. Hays, 318 F.Supp. 1368 (E.D.Ark.1970).

■ We agree with the District Court that Congress expressly disclaimed any general preemptive intent in enacting Title VII, and that the Arkansas statute can be held invalid only if it is in conflict with the Civil Rights Act. See, 42 U.S.C. §§ 2000e–7 and 2000h–4.

Insofar as the Arkansas statute results in discrimination against men,[3] we also agree with the trial court that conflict with Title VII can be avoided by requiring Potlatch to pay its male employees the same premium overtime rate which it is compelled to pay its female employees. As the trial court pointed out:

"Discrimination with respect to pay between two classes of employees can be eliminated in either one of two ways. One class can be paid more or the other class can be paid less. * * *

"As far as Act 191 of 1915 [Ark. Stat.Ann. § 81–601] is concerned, an employer can comply with it and with the Civil Rights Act by paying daily overtime to both men and women, * * *. The Arkansas statute does not say that women must be paid more than men; it simply says that they must be paid daily overtime without making a similar requirement as to men.

"While Title VII of the Civil Rights Act was not passed to raise wages generally, it certainly does not 'impede' or 'frustrate' the purpose of the Act to require an Arkansas employer to eliminate discrimination by paying its male employees more than

654 (8th Cir. May 7, 1971) (unpublished order). The trial judge held that (1) Ark.Stat.Ann. § 81–601 was not repealed by Act 25 of 1968, (2) § 81–601 can be enforced through civil proceedings under Ark.Stat.Ann. § 81–612, and reiterated that (3) § 81–601 was valid. Potlatch Forests, Inc. v. Hays, 3 E.P.D. ¶ 8297 (E.D.Ark.1971). None of the parties have contested holdings (1) and (2).

2. 42 U.S.C. § 2000e–2 reads in part:

"(a) It shall be an unlawful employment practice for an employer—

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

"(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

3. Potlatch contends, for the first time before this Court, that Ark.Stat.Ann. § 81–601 is intended to limit the hours women can work, thus discouraging their employment and discriminating against them. See, Angela Rivera, et al. v. Division of Industrial Welfare of State of California, 1 CCH-EPD ¶ 9876 (Cal.Ct. App.1968). See generally, L. KANOWITZ, WOMEN AND THE LAW, 125 (1969). We decline to consider this issue because no evidence with respect to whether the Arkansas statute results in discrimination against women was offered at trial. Moreover, the trial court made no findings in this regard. Attached to Potlatch's brief on appeal is a letter from the Arkansas Department of Labor which states that the purpose of the statute is to limit overtime hours for women. See, Potlatch Forests, Inc. v. Hays, 318 F. Supp. 1368 (E.D.Ark.1970). Since this letter was not offered in evidence before the trial court, it will not be considered by us. Furthermore, there is no evidence in this record tending to show that the statute in fact had the stated effect.

it would pay them ordinarily in order to equalize their pay with that of women."

Potlatch Forests, Inc. v. Hays, 318 F. Supp. at 1375.

In the present case, Potlatch insists that it has been paying its male employees, as well as its female employees, the same premium overtime rate. Furthermore, Potlatch has conceded that the anti-sex discrimination provisions of Title VII will compel it to continue doing so if we uphold, as we do, the validity of the Arkansas statute.

There is ample support for the position that any discrimination against men resulting from the Arkansas statute is to be cured by extending the benefits of that statute to male employees rather than holding it invalid. As the District Court pointed out, this position is in accord with the express policies of the Equal Pay Act, 29 U.S.C. § 206(d) (1).[4] See, Shultz v. American Can Company-

Dixie Products, 424 F.2d 356, 359 (8th Cir. 1970); Murphy v. Miller Brewing Company, 307 F.Supp. 829, 836–837 (E. D.Wis.1969); 29 C.F.R. §§ 800.60 and 800.61 (1972); L. Kanowitz, Woman and the Law, 121, 147.(1969); 7 A.L.R. Fed. 707, 713, 751–753 (1971). While the Equal Pay Act is not as far reaching as Title VII, it is of considerable help in interpreting the latter act. See, Ammons v. Zia Company, 448 F.2d 117 (10th Cir. 1971); Hodgson v. Brookhaven General Hospital, 436 F.2d 719 (5th Cir. 1970); Shultz v. Wheaton Glass Company, 421 F.2d 259, 266 (3rd Cir. 1970); Kanowitz, *supra* at 133; 7 A.L.R. Fed. 707, 713 (1971).

Before the trial court, the Equal Employment Opportunity Commission (E. E.O.C.), appearing as amicus curiae, also took the position that the benefits of the Arkansas statute should be extended to male employees. Subsequently, the E.E.O.C. has formalized its position in its current regulations.[5] The ad-

---

4. 29 U.S.C. § 206 reads in part:
"(d) (1) No employer having employees subject to any provisions of this section shall discriminate, with any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.*" (Emphasis added)

5. 29 C.F.R. § 1604.2 (eff. April 5, 1972) states in part:
"(3) A number of States require that minimum wage and premium pay for overtime be provided for female em-

ployees. An employer will be deemed to have engaged in an unlawful employment practice if:
"(i) It refuses to hire or otherwise adversely affects the employment opportunities of female applicants or employees in order to avoid the payment of minimum wages *or overtime pay* required by State law; or
"(ii) It does not provide the same benefits for male employees.
"(4) As to other kinds of sex-oriented State employment laws, such as those requiring special rest and meal periods or physical facilities for women, provision of these benefits to one sex only will be a violation of title VII. An employer will be deemed to have engaged in an unlawful employment practice if:
"(i) It refuses to hire or otherwise adversely affects the employment opportunities of female applicants or employees in order to avoid the provision of such benefits; or
"(ii) It does not provide the same benefits for male employees. If the employer can prove that business necessity precludes providing these benefits to both men and women, then the State law is in conflict with and superseded by title VII as to this employer. In this situation, the employer shall not

ministrative interpretation of the Act by the E.E.O.C. is entitled to great deference. Griggs v. Duke Power Co., 401 U.S. 424, 433–434, 91 S.Ct. 849, 28 L. Ed.2d 158 (1971); Rosenfeld v. Southern Pacific Company, 444 F.2d 1219, 1227 (9th Cir. 1971). In addition, the position of the E.E.O.C. finds support in recent scholarship. Kanowitz, *supra* at 120–124, 189; Developments in the Law, Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 Harv.L.Rev. 1109, 1188–1190 (1971).

 In arguing that the Arkansas statute must be declared invalid, Potlatch relies on the decisions of several federal courts which have invalidated state protective statutes, regulating the number of hours women could work or the number of pounds they could lift, or prohibiting their employment in specified occupations.[6] The invalidated statutes differ from the Arkansas statute because their effect is to prohibit the employment of all members of one sex, in certain occupations. Potlatch Forests, Inc. v. Hays, *supra,* 318 F.Supp. at 1373, 1375. It would place an unreasonable burden upon employers to require

them to extend the "benefits" of such protective laws to both sexes. *Cf.,* Local 189, United Papermak. & Paperwork., A.F.L.–C.I.O., CLC v. United States, 416 F.2d 980, 989 (5th Cir. 1969). See, Developments in the law, *supra* at 1186–1195; Brown, et al., The Equal Rights Amendment: A Constitutional Basis for Equal Rights for Women, 80 Yale L.J. 872, 934–936 (1971).

In this case, no such unreasonable burdens are imposed by extending the benefits of the Arkansas statute to male employees.

"The financial burden thus placed upon Potlatch may seem onerous, but federal labor legislation enacted over the last thirty odd years has placed many onerous burdens on employers. It is open to Arkansas employers generally to seek repeal of Act 191 of 1915. It is open to Potlatch as an individual employer to rearrange its working schedules so that nobody works more than eight hours a day until all employees have worked their first forty hours in a workweek."

Potlatch Forests, Inc. v. Hays, *supra,* 318 F.Supp. at 1375.

Affirmed.

provide such benefits to members of either sex."

See, 1972 CCH Employment Practices Guide ¶ 6348, E.E.O.C. Decision (No. 72–1115, Feb. 18, 1972).

6. LeBlanc v. Southern Bell Telephone and Telegraph Co., 333 F.Supp. 602 (D.La. 1971) (hours); Ridinger v. General Motors Corporation, 325 F.Supp. 1089 (S.D Ohio 1971) (prohibition of female employment in certain occupations, weights, hours, required rest periods); Kober v. Westinghouse Electric Corporation, 325 F.Supp. 467 (W.D.Pa.1971) (hours); Garneau v. Raytheon Company, 323 F. Supp. 391 (D.Mass.1971) (hours); Local 246, Util. Wkrs. U. of America, A.F.L.–C.I.O. v. Southern California Edison Co., 320 F.Supp. 1262 ¹(C.D.Cal.1970)

(weights); Caterpillar Tractor Co. v. Grabiec, 317 F.Supp. 1304 (S.D.Ill. 1970) (hours); Richards v. Griffith Rubber Mills, 300 F.Supp. 338 (D.Ore. 1969) (weights); Rosenfeld v. Southern Pacific Company, 293 F.Supp. 1219 (C. D.Cal.1968) (hours-weights), aff'd, 444 F.2d 1219 (9th Cir. 1971). But, *cf.,* Jones Metal Products Co. v. Walker, 29 Ohio St.2d 173, 281 N.E.2d 1 (1972); 1972 CCH Employment Practices Guide ¶ 5062, New Mexico Attorney General's Opinion (May 3, 1972). The appellant also relies on Bowe v. Colgate-Palmolive Company, 416 F.2d 711 (7th Cir. 1969), and Weeks v. Southern Bell Telephone & Telegraph Company, 408 F.2d 228 (5th Cir. 1969). Neither of these cases involved state protective laws.