Catherine KOBER, Plaintiff,
v.
WESTINGHOUSE ELECTRIC CORPO-
RATION, Defendant.
Civ. A. No. 68–1306.

United States District Court,
W. D. Pennsylvania.
March 29, 1971.

Berger & Berger, Pittsburgh, Pa., for plaintiff.

John G. Wayman, Pittsburgh, Pa., for defendant.

Russell Specter, David W. Zugschwert, Office of General Counsel E. E. O. C., Washington, D. C., *amici curiae*.

## FINDINGS AND OPINION

GERALD J. WEBER, District Judge.

This is a suit seeking damages and injunctive relief brought under Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e et seq.]. The Court finds that it has jurisdiction of this action under 42 U.S.C. § 2000e–5(f) and that defendant is an employer in an industry affecting commerce within the meaning of the Act, 42 U.S.C. § 2000e (b). The Complaint alleges that plaintiff was discriminated against with respect to her classification of employment on the basis of sex. Plaintiff, a female employee of defendant Westinghouse Electric Corporation was classified as a Class A Peripheral Machine Operator, Job Class 11, on October 1, 1961, and on February 13, 1967 made application for a job opening as Computer Console Operator, Job Class 12, a job for which she was qualified. A male employee with less seniority than plaintiff was promoted to fill the vacancy on April 1, 1967. Defendant Westinghouse failed to promote plaintiff to this job on the grounds that she could not have performed the job without causing Westinghouse to violate the Pennsylvania Women's Labor Law, 43 P.S. Sec. 103 et seq., which limited the number of hours which women could work. There is no dispute that the employment of plaintiff in the position sought would have violated the terms of that state statute.

■ The Federal Act provides in Sec. 703(e) (1), 42 U.S.C. § 2000e–2(e), an exception which permits an employer to limit certain jobs to members of a specific sex because a "bonafide occupational qualification" exists. Defendant argues that the mandatory state legislation creates this exception. Section 708, 42 U.S.C. § 2000e–7, and 1104, 42 U.S.C. § 2000h–4, of the Act provided that existing state legislation, to the extent that it was not inconsistent with the provisions of the Act, was to be preserved. However, the Courts have interpreted the "bonafide occupational qualification" narrowly and have required the employer to prove that he had reasonable cause for believing that substantially all women would be unable to perform safely and efficiently the duties of the job involved. Weeks v. Southern Bell Tel. & Tel. Co., 408 F.2d 228 [5th Cir., 1969]. This burden the defendant in this case did not assume to undertake. Reliance on the state statute alone to create the bonafide occupational qualification is unavailing. In Rosenfeld v. Southern Pacific Co., 293 F.Supp. 1219 [C.D.Cal., 1968], the court held that reliance on a state statute did not create the bonafide occupational qualification under the Act.

Following the adoption of the Act a great deal of administrative indecision followed. The Equal Employment Opportunity Commission wrestled with the problems of conflicts between the Act and so-called "protective" state legislation in the field by the issuance of various somewhat contradictory guidelines and administrative regulations. In November 1965 the EEOC published guidelines which stated that an employer would not be considered in violation of the Act for refusing to employ women in jobs which women are legally prohibited from performing because of hazards reasonably to be apprehended from such employment. [30 Fed.Reg. 14,926, December 2, 1965], [29 C.F.R. Sec. 1604.1(a) (3), (b) and (c)]. The guidelines also contained an "on the other hand" clause [(c) (2)] as well as an admonition that the employer seek any available administrative exemption from the state regulation in support of any claimed bonafide occupational qualification.

On August 19, 1966, the EEOC announced that it would not make determinations in cases where irreconcilable

conflicts existed between the Act and state protective legislation where administrative exceptions under state law were unavailable, but would advise complainants of their right to bring suit within thirty days under Sec. 706(e), 42 U.S.C. § 2000e–5(e) of the Act. [CCH Emply. Prac.Guide 7311].

This policy was not followed in the present case and it was later rescinded by a policy statement issued February 24, 1968 [33 C.F.R. 3344] some ten days after the Commission's finding of reasonable cause in this case.

On March 27, 1967, following defendant's refusal to promote her, plaintiff filed a charge of discrimination under the Act with the EEOC. A finding of reasonable cause was issued on February 15, 1968 on the ground that defendant had not sought an administrative exemption from the state Act. Subsequently, during the conciliation stage of the proceedings the conciliator suggested that defendant apply to the Commonwealth of Pennsylvania for an administrative exception to cover plaintiff's employment in the job which she sought. The state administrator would not grant a clear-cut exception to cover the work requirements of the job, and there is serious doubt of his power to do so under the statute. On October 14, 1968 the EEOC notified defendant that conciliation had failed and of her right to bring suit for relief under the Act within thirty days. Hence this lawsuit.

The defendant argues that this suggestion of the Commission, and the text of its decision of February 15, 1968 calling the attention of the defendant to the possibility of administrative exceptions to the Pennsylvania Act created by Rule G–19, adopted April 23, 1966, is a recognition by the Commission of an irreconcilable conflict between the Act and the state law. While the suit was pending, in August 1969, the EEOC finally arrived at a position that the conflicting state laws and regulations, "originally promulgated for the purpose of protecting females, have ceased to be relevant to our technology or to the expanding role of the female worker. * * * Accordingly, the Commission has concluded that such laws and regulations conflict with Title VII of the Civil Rights Act of 1964 and will not be considered a defense to an otherwise established unlawful employment practice * * * ". [29 C.F.R. § 1604.1(b)].

Thereafter, back in Pennsylvania, the state's Attorney General pondered the problem of the statutory regulation of the working hours of female employees and concluded that it had been repealed by implication, by the adoption of the Amendment to the Pennsylvania Human Relations Act of July 9, 1969 [43 P.S. Sec. 951 et seq.]. (Opinion of the Attorney General of the Commonwealth of Pennsylvania to the Pennsylvania Secretary of Labor and Industry, November 14, 1969).

Following the Opinion of the Attorney General of the Commonwealth of Pennsylvania on November 14, 1969, the defendant declared that it would henceforth regard the Pennsylvania Women's Labor Law as repealed, and subsequently on April 1, 1970 the plaintiff was promoted to the first available vacancy in a Code 12 job. Defendant, however, points to the fact that there is no judicial determination of the Pennsylvania statute and requests its construction in this case.

█ The question remaining for determination by this Court is the nature of any relief to be accorded plaintiff under this set of facts. Because Westinghouse is now in compliance and indicates its intention to comply and because plaintiff has been accorded the rights which she sought we see no reason for the exercise of injunctive relief.

The Commission argues that defendant cannot raise the defense from liability provided under Sec. 713(b) of the Act because it was not specifically pleaded. Sec. 713(b) is the "good faith defense" which exempts from liability for monetary damages a defendant employer who,

" * * * pleads and proves that the act or omission complained of was in good faith, in conformity with, and in reliance on any written interpretation or opinion of the Commission," 42 U.S.C. Sec. 2000e–12(b).

The Commission's own Regulations protect it from loose language. Such "written" interpretation of the Commission applies only to,

"(a) a letter, entitled 'opinion letter' and signed by the General Counsel on behalf of the Commission or (b) matter published and so designated in the *Federal Register*, may be considered a 'written interpretation or opinion of the Commission' within the meaning of Sec. 713 of Title VII." 29 C.F.R. 1601.30 (1965).

This Regulation has received judicial approval. Local 189, United Papermakers etc. v. United States by Mitchell, 416 F.2d 980 [5th Cir., 1969].

Therefore, despite the shifting position of the EEOC, the defendant can produce no "written opinion" of the nature required by the Regulations. It is clear that it sought none under the provisions of 29 C.F.R. 1601.28.

While defendant may not rely on a written interpretation or opinion of the Commission, we nevertheless feel that it is clear that the position of the EEOC in its guidelines, with its "on the one hand" and "on the other hand" vacillations, supplied little help to defendant. While defendant may not have made the old college try on behalf of Catherine Kober, it was honestly impaled on the horns of a dilemma. It was faced with the new Act, with areas of doubtful interpretation. Sec. 708, 42 U.S.C. § 2000e–7, of that Act provided that:

"Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful em-ployment practice under this subchapter."

(See also the cause which saves state law in Sec. 1104, 42 U.S.C. § 2000h–4 of the Act).

Thus Congress had warned the employer that he might still be liable for State law penalties if it followed the provisions of the Act blindly, and the Pennsylvania State Act contained a clear mandate prohibiting employment of women over eight hours which the state administrator was either unwilling or powerless to waive in its entirety.

The Commission in its Supplemental Brief, after several pages of review to show that its regulations and guidelines made its position clear, then admits that those guidelines "simply did not imply an affirmative course of action, but only indicated that such reliance on State laws might, in certain circumstances, constitute a violation of the Title". (p. 13).

We conclude from this review of Commission Regulations and Guidelines that the Commission took no firm position until August 19, 1969, when it revoked former Guidelines appearing in 29 C.F.R. 1604.1(a), (b) and (c) and substituted a new subsection (b) which for the first time clearly stated the Commission's position that state laws which limited employment of females " * * * during certain hours of the night, or for more than a specified number of hours per day or per week" conflict with Title VII of the Civil Rights Act of 1964 and will not be considered a defense to an otherwise established unlawful employment practice or as a basis for the application of the bonafide occupational qualification exception. 34 C.F.R. 13,368, August 19, 1969; 29 C.F.R. 1604.1(b).

And, on November 14, 1969, the Attorney General of the Commonwealth of Pennsylvania, by letter opinion to the Pennsylvania Secretary of Labor gave his opinion that the provisions of the Pennsylvania Women's Labor Law of 1913 as amended, 43 P.S. § 101 et seq., insofar as it regulated hours of employ-

ment of females, conflicted with the 1969 Amendment to the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. and that under the Pennsylvania Statutory Construction Act, the former Act is impliedly repealed by the later Act. The Attorney General also noted that the Federal Civil Rights Act of 1964 was consistent with the 1969 Amendment to the Human Relations Act in that it forbade discrimination in employment based on sex, and that "Rules and regulations were promulgated under the Federal statute to provide guidelines for employers and, recently these regulations were amended to provide that no defense can be maintained based on a state statute which may be in conflict with the federal law and regulations."

Thus, defendant now has these administrative indications of statutory intent, but it still has no controlling judicial construction of its actions under either state or federal law and it seeks such a declaratory judgment in this case.

Defendant's principal argument is that because of its reliance upon and action in accordance with state law it did not "intentionally" violate the provisions of the Act in the sense that the word "intentionally" is used in Sec. 706(g), which is the section providing for injunctive relief and monetary damages to a person aggrieved under the Act. It, therefore, seeks to have such remedy limited to declaratory relief only.

While a number of courts have followed the reasoning of Judge Wisdom in Local No. 189, United Papermakers etc. v. United States, supra, affirming 282 F. Supp. 39 [E.D.La., 1968], in which he found that the phrase "intentionally engaged in" an unlawful employment practice meant solely that the defendant meant to do what he did, that is, his employment practice was not accidental, (416 F.2d p. 996), our reading of the United Papermakers etc. case discloses that there was no reliance by the employer upon a "protective" state statute in that case. Actually, the discrimination had arisen because promotion was based on seniority lists in which seniority was

accrued in particular job classifications and these job classifications had been carried over from a prior period of time when the job classifications had been racially segregated. Thus, the only good faith reliance which the employer could exhibit was upon a labor contract which preserved this prior system of segregation. The District Court's decree as affirmed by the Court of Appeals was actually an elaborate injunctive order on conditions of employment very similar to a collective bargaining agreement, studded with provisos to protect the employer from the imposition of unsafe or inefficient practices and at the same time prevent racial discrimination. No monetary damages were awarded except the imposition of costs and counsel fees.

Other courts have adopted the same interpretation as Judge Wisdom in the United Papermakers and Paperworkers' case, supra, that the specific intent of violating the statute required under Sec. 706(g), 42 U.S.C. § 2000e–5(g), as a prerequisite for injunctive or monetary relief was merely the intent to do the act which resulted in violation. See Banks v. Lockheed-Georgia Co., 46 F.R.D. 442 [N.D.Ga., 1968]; Dobbins v. Local No. 212, IBEW, 292 F.Supp. 413 [S.D.Ohio, 1968], and Clark v. American Marine Corp., 304 F.Supp. 603 [E.D.La., 1969].

Banks v. Lockheed-Georgia Co., supra, merely held a complaint charging racial discrimination sufficient to support a class action, despite its failure to specifically allege intentional discrimination, the Court holding that it may assume that a defendant intended the natural consequences of its act.

In Dobbins v. Local 212, supra, the court found injunctive relief necessary to effectuate the declared Congressional policy, and found the conduct of defendant (racial discrimination) "'by its very nature' contains the implications of the required intent." 292 F.Supp. p. 448.

In Clark v. American Marine Corp., supra, the court noted "However, should it be material, the conclusion that the conduct was deliberately intended to dis-

criminate against Negroes is, on the present record, irresistible." 304 F. Supp. p. 607.

In all of these cases the court found that injunctive relief was required under the circumstances to end the discriminatory practices. There is no such necessity here, the defendant having now agreed to full compliance.

In none of those cases was there any element of reliance by an employer upon the terms of a state statute which was in conflict with the Act. They all involve patterns of segregation established by union contracts or union organizations, which resulted in segregated job classifications. In none of those cases was the employer's conduct controlled in any way by a conflicting state statute.

We have found only two cases dealing with the issue of appropriate relief where an employer's actions were carried out under the proscriptions of a state law where the District Court subsequently found the state law provisions to be in conflict with the Act. In Rosenfeld v. Southern Pacific Co., supra, where the employer relied upon state protective legislation limiting the hours of work of women and the weight lifting assignments to be given women employees, the court found the state statute to be contrary to the Act and not creating a bona fide occupational qualification, and declared defendant's refusal to promote to be discriminatory under the Act. It gave injunctive relief but did not make a specific finding of "intentional" violation of the Act. No monetary damages were awarded except costs and reasonable counsel fees. The only other case in this category is Richards v. Griffith Rubber Mills, 300 F.Supp. 338 [D.Ore.1969], where again a woman was denied promotion because a state regulatory commission had imposed regulations placing weight lifting restrictions on women incompatible with the job which the applicant sought and also because of union contract provisions giving certain rest breaks to women which were incompatible with the requirements of the position sought. The Court there held that the defendant had shown no proof of a bona fide occupational qualification, that the state regulatory commission's order was discriminatory and contrary to the Act, but that the defendant had acted in good faith in relying upon the state regulatory commission's regulation and, therefore, did not "intentionally", (i. e. knowingly or wilfully) engage in unfair employment practice under the Act. The court, therefore, refused to issue an injunction because the complainant had been promoted to the position which she sought. Monetary damages were not mentioned, but the court awarded costs and counsel fees under the provisions of Sec. 706(k) of the Act [42 U.S.C. § 2000e–5(k)], which allows the court to award reasonable attorney's fees as part of the costs to the "prevailing party". This section differs from the provisions of Sec. 706(g), 42 U.S.C. § 2000e–5(g), which allows injunctive relief and monetary damages for an "intentional" violation of the Act. Richards resulted in declaratory relief in the nature of a finding of the invalidity of the state regulation under the Act, and the award of counsel fees under the above-cited section.

Plaintiff claims and has produced evidence of the wage loss that she suffered by reason of her exclusion from the Code 12 job classification from February 13, 1967 to April 1970. She claims the difference between what she was actually paid in the lower classification and what she could have earned in the higher job classification from which she was excluded during this period by reason of the actions of the defendant.

Because we find no necessity for injunctive relief under the present circumstances, and because we find no "intentional" violation of the act by defendant at any time until the barrier of conflicting state law was removed, and because we find that defendant promoted plaintiff to the higher classification on the next vacancy occurrring after the barrier of the state statute was removed, we find no basis for the award of damages for wage loss claimed by plaintiff.

We have examined the cases where findings of intentional discrimination have been made and find generally that such claims for wage loss are not granted, except in cases of discharge, where reinstatement and back pay have been ordered as relief. See Sprogis v. United Air Lines, Inc., 308 F.Supp. 959 [N.D.Ill. 1970] (discharge of a female air-line hostess for marriage) and Jackson v. Veri Fresh Poultry, Inc., 304 F.Supp. 1276 [E.D.La.1969] (discharge of a Seventh Day Adventist for refusal to work on Saturday).

In Cheatwood v. South Central Bell Tel. & Tel. Co., 303 F.Supp. 754 [M.D. Ala.1969], a case alleging sex discrimination in promotions, the court considered whether the claim for pay loss differential created a jury issue, and determined that it was a matter for the court. The defendant claimed a bona fide occupational qualification exception for males which the court did not find. The court issued an injunction and awarded costs and counsel fees.

Under the statute the award of damage for lost past differential is a discretionary matter, even on a finding of "intentional" violation. Under the circumstances of this case we do not find such relief appropriate in view of the defendant's dilemma under threat of state prosecution, and its compliance when the threat of state prosecution was eliminated.

■ We find that an award of counsel fees, however, is appropriate to plaintiff as the prevailing party under Section 706, 42 U.S.C. § 2000e–5, of the Act, as well as the award of costs.

■ We conclude, as a matter of law, that the provisions of the Pennsylvania Women's Labor Law of 1913, as amended, insofar as it regulates hours of employment of females, conflicts with the provisions of Title VII of the Civil Rights Act of 1964, and that under the Supremacy Clause of Article VI, cl. 2, of the United States Constitution, in the event of a conflict between State and Federal legislation, the Federal legislation will prevail.

Therefore, this Court now specifically finds and concludes that the failure to hire or promote females, to positions for which they are otherwise qualified, on the basis of sex is a violation of Title VII of the Civil Rights Act of 1964, despite any provision of the Pennsylvania law regulating the hours of work of women.