**Gloria Kendall LeBLANC**

v.

**SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY.**

**Helen Jenkins ROIG**

v.

**SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY.**

**Civ. A. Nos. 67–573, 67–574.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

Oct. 4, 1971.

Victor H. Hess, Jr., Leonard A. Washofsky, Jackson & Hess, New Orleans, La., for plaintiffs.

Michael J. Molony, Jr., Robert K. McCalla, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for defendant.

Kenneth M. Davidson, Buffalo, N. Y., Robert Ellis Palmer, Amite, La., amici curiae, for National Organization for Women.

Elizabeth Boyer, Novelty, Ohio, Sylvia Roberts, Baton Rouge, La., amici curiae, for Women's Equity Action League.

Samuel H. Collins, New Orleans, La., amicus curiae, for Communications Ass'n for Equal Opportunity, Inc.

Philip B. Sklover, David Zugschwerdt, Washington, D. C., Charles M. White, New Orleans, La., amici curiae, for Equal Employment Opportunity Comm.

Jack P. F. Gremillion, Atty. Gen., State of Louisiana, William P. Curry, Jr., Special Counsel, New Orleans, La., amici curiae, for State of Louisiana.

**HEEBE, District Judge:**

On July 8, 1965, and again on February 28, 1967, plaintiff Gloria Kendall LeBlanc, an employee of the Southern Bell Telephone and Telegraph Company (hereinafter the Telephone Company) since 1954, applied in writing to the Telephone Company for a promotion to the position of test deskman. Plaintiff Helen Jenkins Roig, a Telephone Company employee since 1955, likewise applied for the same job opening on March 15, 1966, and on February 28, 1967. All applications were similarly rejected by letters from the Telephone Company informing plaintiffs that the Telephone Company did not promote women to the test deskman position.

Both plaintiffs filed appropriate charges with the Equal Employment Opportunity Commission (hereinafter EEOC). After many months of conciliation efforts by the EEOC failed, the EEOC on March 22, 1967, sent both plaintiffs a letter informing them of the conciliation failure and of their right to sue their employer for the alleged violations within thirty days.[1]

Alleging that they had been denied promotion solely because of their sex, plaintiffs filed this action against the Telephone Company. They alleged a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and sought injunctive relief and monetary damages. The Telephone Company admitted that they had not promoted plaintiffs but denied that they had engaged in any employment practice violative of Title VII. Rather, they claimed, any failure to promote plaintiffs was dictated by certain Louisiana criminal statutes, La. Rev.Stat. §§ 23:311, 332, which prohibit employers from requiring female employees to work in excess of the maximum hours limitations imposed by the statutes. Plaintiffs, in response, argued that these statutes had been preempted by Title VII and could not therefore sanction defendant's conduct.

At the Court's invitation, the State of Louisiana then filed a brief in support of the validity of La.Rev.Stat. §§ 23:311, 332. This, in turn, elicited a surge of brief-writing activity by the EEOC and three other amicae curiae.[2] Having heard the evidence at trial and having considered all the briefs filed, the Court is now ready, albeit hesitant, to venture into the thicket the parties and amicae have unwittingly created.

## A. BACKGROUND

As previously mentioned, this case arises out of the refusal of the Telephone Company to consider plaintiffs' bids for promotion to the job of test deskman. The evidence adduced at trial, together with the four stipulations of fact agreed on by the parties, discloses that the test deskman is a central figure in handling equipment malfunctions for the Telephone Company. A customer's complaint of a malfunction is received by a repair clerk who fills out a "trouble ticket" describing the nature of the complaint. The "trouble ticket" is then given to a test deskman who analyzes the complaint.

---

1. The Telephone Company's challenges to this Court's jurisdiction were earlier denied. The Court reaffirms its earlier findings that the plaintiffs timely complied with the jurisdictional prerequisites of Title VII.

2. By leave of Court, the National Organization of Women, the Communications Association for Equal Opportunity, Inc., and the Women's Equity Action League filed briefs as amicae curiae. The Court wishes to thank them for their assistance.

This is basically done through the use of a Type 14 Local Test Desk—a piece of electronic equipment with which the deskman can analyze the resistance or capacity along the telephone lines and hopefully determine where the trouble lies. After the test deskman locates the apparent malfunction, he dispatches a telephone repairman to that location and works with him, if necessary, to further pinpoint the location of the malfunction. When the repairs have been completed, the test deskman will recheck the line with the desk set and then notify the customer of the repairs. He then completes the "trouble ticket" by recording the malfunction found, its cause and the repairs needed.

At the time they first bid for the test deskman's job, Mrs. Jenkins was working for the Telephone Company as an assignment clerk, and Mrs. Roig was working as an outside plant clerk. The job of test deskman has a higher wage rate than either of these jobs. Both plaintiffs had worked for their employer at least ten years in these and other jobs and had commendable work records. The Court believes that both plaintiffs were well qualified to bid for the job of test deskman.

Without considering their qualifications, the Telephone Company declined to consider plaintiffs' bids on the grounds that since the job required an employee to work more than forty-eight hours a week, Louisiana law prohibited it from promoting them or any other women to this job. Plaintiffs attacked this position as an unlawful employment practice by first filing charges with the Equal Employment Opportunity Commission and ultimately by filing these lawsuits.

### B. WERE THE TELEPHONE COMPANY'S EMPLOYMENT PRACTICES DICTATED BY STATE LAW?

Plaintiffs first contend that we need not pass on the validity of the Louisiana statutes since they do not apply to the job classification of test deskman or alternatively because defendant is estopped from using the statutes as a defense because it has flaunted their provisions on numerous occasions.

1. *Is the position of test deskman exempt from the maximum hour laws?*

La.Rev.Stat. § 23:332 provides in part that

"No female shall be employed in any * * * telephone or telegraph * * * company, * * * for more than eight hours in any one day and not more than forty-eight hours or six days in any consecutive seven day period."

Certain exemptions to this sweeping prohibition are contained in La.Rev.Stat. § 23:337 including one for "Females employed as * * * telephone, telegraph, or switchboard operators." Jobs so exempted from the provisions of § 332 are still subject to the provisions of La.Rev. Stat. § 23:311:

"No female shall be employed in any * * * [occupation exempted from these provisions] for more than nine hours in any one day or fifty-four hours in any one week."

Violations are subject to the criminal penalties contained in La.Rev.Stat. § 23:-314.

Plaintiffs claim that a test deskman's duties are essentially those of a telephone, telegraph or switchboard operator, and consequently exempt from the 48-hour limitation of § 312. Since defendant does not claim that a test deskman consistently works in excess of § 311's 54-hour limit plaintiffs contend that there is in fact no statutory bar to their promotion.

At the trial both plaintiffs, but especially Mrs. Roig, testified concerning the duties of both operators and test deskmen and concluded that, in their opinion, the jobs were similar. Defendant offered the testimony of Mr. Fred McNeel who had worked for the Telephone Company for 23 years and was currently General Traffic Manager. Based on his experience with the various jobs, he testified in detail concerning the duties of the eight different types of opera-

tors employed by the Telephone Company. Essentially, he testified that the operators assist customers in making or completing calls, while the test deskmen assist telephone repairmen in locating and correcting malfunctions in the telephone lines. He concluded that "the duties, responsibilities and skills of a telephone, telegraph or switchboard operator cannot be considered the same or similar to the duties of a test deskman."

■■■ Since La.Rev.Stat. § 23:332 was originally intended to be remedial or protective in nature, its exceptions (La. Rev.Stat. § 23:337) are to be construed narrowly. We agree with the defendants that the job of test deskman is too dissimilar from any of the jobs specifically mentioned in § 337 to be considered exempt from the operation of § 332.

2. *Is a test deskman required to work more than 48 hours a week?*

■■■ Plaintiffs contend that an over-forty-eight-hour work week is not a requirement for the job of test deskman; rather, the Telephone Company has arbitrarily and artificially added extra hours to the test deskman's normal work week so as to be able to keep that job category all-male.

Based on the evidence before us, we find that test deskmen at the six test centers in the New Orleans area averaged over 48 hours work a week 42.6% of the time during the period from December 1964 through August 1966. During this period they averaged more than eight hours work a day 43% of the time. Thus, while test deskmen are assigned an eight-hour shift five days a week, they consistently work in excess of their regular assignments. It is not unreasonable for the Telephone Company to require a prospective test deskman to be able to work overtime.

The Court finds that this overtime is caused primarily because the number of malfunctions fluctuates considerably due to factors (such as storms) beyond the Telephone Company's control; because some malfunctions occur at night when no test deskman regularly works; and because if a repairman has been unable to correct a malfunction by the end of the shift, the test deskman must work overtime to help the repairman locate and repair the malfunction.

Plaintiffs have failed to prove that this overtime condition has been artificially created by either having an insufficient number of test deskmen or by shifting certain duties from other positions, such as repair clerk to the test deskman. While these factors could conceivably inflate the overtime required of a test deskman, plaintiffs have failed to introduce evidence to show these factors existed, or if they existed, what effect they would have on the overtime requirement.

3. *Is the Telephone Company estopped from pleading the statute as a defense?*

As we understand plaintiffs' final argument as to the inapplicability of the statutes, it is that the Telephone Company, having flaunted the provisions of the statutes when it was convenient to do so, should now be estopped from asserting these statutes as a defense.

■■■ At trial, both plaintiffs testified that on several occasions, such as in the aftermath of a hurricane, they and other women worked far in excess of eight hours a day, or forty-eight hours a week. Plaintiffs failed to prove that such overtime was a recurring practice apart from emergency situations while the defendant introduced evidence to show that attempts had been made to curb even this overtime. Without deciding whether plaintiffs' allegations, if proved, would estop the defendant, we must find that plaintiffs have failed to prove that the Telephone Company engaged in any practice of flaunting the Louisiana protective laws.

Plaintiffs having failed to prove otherwise, the Court finds that the Telephone Company's decision not to consider plaintiffs for the test deskman position was compelled by their desire not to violate La.Rev.Stat. §§ 23:311, 332.

## C. THE VALIDITY OF THE LOUISIANA STATUTES

Having concluded that the Telephone Company did in fact rely on the Louisiana protective laws in deciding not to promote plaintiffs, we must now consider the validity of La.Rev.Stat. §§ 23:311, 332.

Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's * * * sex." 42 U.S.C. § 2000e-2(a) (1). The Telephone Company has admitted that it did not consider promoting the plaintiffs because of their sex and thereby committed a *prima facie* violation of the Act. The Telephone Company argues that their good faith reliance on the Louisiana protective laws should preclude the plaintiffs from obtaining any affirmative relief as against the Telephone Company. Rather, the plaintiffs are limited, the Telephone Company argues, to obtaining a judgment declaring that as to the Telephone Company, the Louisiana protective laws have been pre-empted by Title VII. If the plaintiffs obtain such an order, the Telephone Company has agreed to consider both plaintiffs for the next vacancy in the test deskman's position.

Unlike other defendants in similar suits, the Telephone Company does not defend the validity of the statute.[3] Rather, they seem to invite what the plaintiffs demand—a judgment declaring at least portions of the statutes invalid under the Supremacy Clause. Into this litigious vacuum, however, has valiantly stepped the State of Louisiana which filed a brief defending the validity of the state statutes.

The state's first argument is that the employment practices dictated by the Louisiana protective laws constitute a "bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise" and hence are permissible under § 703(e) of the Act. 42 U.S.C. § 2000e-2(e).

■ This contention is remarkably similar to that recently rejected by the Ninth Circuit in Rosenfeld v. Southern Pacific Co., 444 F.2d 1219 (9th Cir. 1971). As the Court there pointed out, an employer claiming that a discriminatory practice is a bona fide occupational requirement has the burden of proving that the qualification—in this case sex—is necessary in a specific case to enable an employee to fulfill the duties of a specific job. The burden is not met by simply alleging on the basis of stereotyped characterizations that women as a class cannot, because of physical or sociological reasons, engage in certain types of work. Weeks v. Southern Bell Telephone & Telegraph Co., 408 F.2d 228 (5th Cir. 1969). As stated by the EEOC in its guidelines:

"The principle of non-discrimination requires that individuals be considered on the basis of individual capacities and not on the basis of any characteristics generally attributed to the group." 29 C.F.R. § 1604.1(a) (1) (ii).

■ Here, no allegation has been made that the sex of either plaintiff would prevent her from performing any of the duties of a test deskman. Rather, we have the treadworn assertion of the state that "there are differences between the sexes * * * sociological, physiological and biological * * * which justify rational generic classification," (brief at 5), and that a prohibition on women working in excess of eight hours

---

3. *See e. g.,* Rosenfeld v. Southern Pacific Co., 444 F.2d 1219 (9th Cir. 1971); Weeks v. Southern Bell Telephone & Telegraph Co., 408 F.2d 228 (5th Cir. 1969); Richards v. Griffith Rubber Mills, 300 F.Supp. 338 (D.Or.1969). Some employers have, however, taken affirmative action to have these protective laws declared invalid. *See e. g.,* Caterpillar Tractor Co. v. Grabiec, 317 F.Supp. 1304 (S.D.Ill.1970).

a day or forty-eight hours a week is such a rational generic classification. We join with courts across the nation in condemning such "stereotyped classifications" as failing to constitute a bona fide occupational qualification and hence as unlawful employment practices in violation of Title VII.[4]

■ Alternatively, the state argues that Congress did not intend in passing Title VII to pre-empt the entire field of employer-employee relationships but rather expressly provided for the continuing vitality of certain state laws. The state relies on § 708 and § 1104 to uphold their protective laws. Section 708 provides that:

"Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter." 42 U.S.C. § 2000e-7.

Section 1104 is somewhat similar:

"Nothing contained in any title of this Act shall be construed as indicating an intent on the part of Congress to occupy the field in which any such title operates to the exclusion of State laws on the same subject matter, nor shall any provision of this Act be construed as invalidating any provision of State law unless such provision is in-consistent with any of the purposes of this Act, or any provision thereof." 42 U.S.C. § 2000h-4.

These contentions were also rejected in Rosenfeld v. Southern Pacific Company, *supra*. *See also*, Local 246, Utility Workers v. Southern California Edison Company, 320 F.Supp. 1262 (C.D.Cal. 1970). We agree with those courts that these sections were intended to save those state laws which aimed at preventing employment discrimination and not state laws such as these which purport "to require * * * an unlawful employment practice under this title" or which are "inconsistent with any of the purposes of this Act."

■ These statutes then clearly regulate a field which Congress has entered by enacting Title VII of the Civil Rights Act of 1964. Where state and federal law conflict, as here, the state law must be held to have been pre-empted by the federal law through the operation of the Supremacy Clause of the United States Constitution. Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1 (1824). Therefore, insofar as any of the provisions of La.Rev.Stat. §§ 23:311, 314, 332 and 337 conflict with any of the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., they are invalid under the Supremacy Clause. Where Title VII has not occupied the field, such as where the employer has fewer than twenty-five employees, the Louisiana statutes maintain their validity.[5]

4. Maximum hour and weight laws have been invalidated in the following cases. Rosenfeld v. Southern Pacific Co., 444 F.2d 1219 (9th Cir. 1971); Ridinger v. General Motors Corp., 325 F.Supp. 1089 (S.D.Ohio 1971); Kober v. Westinghouse Electric Corp., 325 F.Supp. 467 (W.D. Pa.1971); Garneau v. Raytheon Co., 323 F.Supp. 391 (D.Mass.1971); Local 246, Utility Workers v. Southern California Edison Co., 320 F.Supp. 1262 (C.D.Cal.1970); Caterpillar Tractor Co. v. Grabiec, 317 F.Supp. 1304 (S.D.Ill. 1970); Richards v. Griffith Rubber Mills, 300 F.Supp. 338 (D.Or.1969). *Cf.*, Bowe v. Colgate-Palmolive Co., 416 F.2d 711 (7th Cir. 1969); Weeks v. Southern Bell Telephone & Telegraph Co., 408 F. 2d 228 (5th Cir. 1969), invalidating company protective regulations. *Contra*, Jones Metal Products Co. v. Walker, 25 Ohio App.2d 141, 267 N.E.2d 814 (1971). Additionally, many states now consider their protective laws as pre-empted by Title VII. *See e. g.*, 3 EPD ¶ 5108 (1969) (Opinion of Michigan Attorney General).

5. We expressly do not consider the validity of the statutes under the Fourteenth Amendment. Muller v. Oregon, 208 U.S. 412, 28 S.Ct. 324, 52 L.Ed. 551 (1908).

**610**

## D. APPROPRIATE RELIEF

Having found that the defendant, Telephone Company, engaged in employment practices violative of Title VII, we must next consider to what relief, if any, plaintiffs are entitled.

In their complaint plaintiffs prayed for an injunction prohibiting the defendant from continuing to engage in unfair employment practices and requiring defendant to promote them to test deskmen and accord them the job benefits and privileges to which they would now be entitled had no discrimination occurred, for damages for lost wages and similar job credits and for attorneys' fees. It was stipulated by the parties that in the event the Court determines that damages and attorneys' fees are appropriate, their quantum would be determined at a future hearing.

### 1. *Injunctive Relief*

 Since the plaintiffs were victims of an unlawful employment practice, this Court would normally consider enjoining the continuation of such practice and ordering that the plaintiffs be considered for promotion to the next available test deskman vacancy. These parties, however, have jointly stipulated that in the event the Louisiana protective laws are declared invalid by the Court, the defendant will promote the plaintiffs to the next vacancy if they are qualified. This appears to us to moot out the issue of injunctive relief. However, the Court will reserve ruling on this issue in the event the stipulation agreed to does not effectively terminate as to the plaintiffs the effects of defendant's unfair employment practices.

### 2. *Damages*

The remedial provisions of Title VII provide that

"If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include reinstatement or hiring of employees, with or without back pay. * * *" 42 U.S. C. § 2000e-5(g)

Both the Fifth Circuit and this Court have long recognized that the statutory requirement that the employer "has intentionally engaged in" an unlawful employment practice "requires only that the defendant meant to do what he did, that is, his employment practice was not accidental." Local 189, United Papermakers v. United States, 416 F.2d 980, 996 (5th Cir. 1969), aff'ing 301 F.Supp. 906 (E.D.La.1969).[6] Here, the Telephone Company never claimed that its policy relative to the promotion of women was accidental but admitted that the policy was deliberate albeit compelled by state law. Hence, plaintiffs have made out a *prima facie* case for the recovery of damages.

 However, the Court in its discretion will limit plaintiffs' relief to an order declaring the protective statutes invalid and will not award damages or additional injunctive relief. While this Court has long advocated a liberal application of Title VII's remedial provisions as necessary to effectuate the intent of Congress, *see e. g.,* Local 189, United

---

6. There is disagreement among the Circuit Courts of Appeal over the meaning of this intent requirement. *Compare,* Sprogis v. United Air Lines, 444 F.2d 1194, 3 EPD ¶ 8239 (7th Cir. 1971) *and* Jones v. Lee Way Motor Freight, Inc., 431 F.2d 245 (10th Cir. 1970) which follow the Fifth Circuit in construing "inten-

tionally engaged in" as requiring only a deliberate as opposed to an accidental practice, *with* Dewey v. Reynolds Metals Co., 429 F.2d 324 (6th Cir. 1970) citing Richards v. Griffith Rubber Mills, 300 F.Supp. 338 (D.Or.1969) which construed intentionally to mean wilfully and knowingly.

Papermakers v. United States, *supra*, we think that several factors combine here to make damages and injunctive relief inappropriate. First, it is our conclusion that the Telephone Company was acting in good faith and that their employment practices were compelled by the state protective laws. This conclusion is buttressed by evidence that in states having no protective laws, the Telephone Company does promote women to the test deskman position and that they are willing to consider these plaintiffs for the job if the statute is declared invalid. In the circumstances of this case, the Telephone Company should not be liable in damages for its good faith attempt to comply with existing state statutes validly enacted and presumed constitutional [7] and "for its failure to predict the future course of constitutional law." Ridinger v. General Motors Corp., 325 F.Supp. 1089, 1099 (S.D.Ohio 1971). *Accord,* Rosenfeld v. Southern Pacific Co., 444 F.2d 1219 (9th Cir. 1971); Kober v. Westinghouse Electric Corp., 325 F.Supp. 467 (W.D.Pa.1971); Richards v. Griffith Rubber Mills, 300 F.Supp. 338 (D. Or.1969). [8]

3. *Attorneys' Fees*

Section 706(k) of Title VII allows the Court in its discretion to award reasonable attorneys' fees to the prevailing party. 42 U.S.C. § 2000e–5 (k). There is no requirement that the prevailing party be the victim of intentional discrimination.

The courts have uniformly awarded attorneys' fees in these cases even where the prevailing party was unable to recover back pay or other damages because the defendant was relying in good faith on a state statute. Ridinger v. General Motors Corp., *supra;* Local 246,

Utility Workers v. Southern California Edison Co., 320 F.Supp. 1262 (C.D.Cal. 1970); Richards v. Griffith Rubber Mills, *supra.* *See also,* Clark v. American Marine Corp., 320 F.Supp. 709 (E.D. La.1970). This is a recognition of the congressional purpose to have Title VII enforced in large part by the individuals wronged acting as private attorneys general. Newman v. Piggie Park Enterprises, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); Jenkins v. United Gas Corp., 400 F.2d 28 (5th Cir. 1968). Awarding attorneys' fees to the prevailing party is one way of insuring that this congressional intent will be effectuated and that individuals will not be deterred from bringing Title VII suits. These plaintiffs having been the victims of an unlawful employment practice, it is only fair that they be allowed to recover the considerable sums they have expended to vindicate not only their rights but also the rights of many other working women.

By joint stipulation, the parties have reserved the determination of the amount of the attorneys' fees for a future hearing. If the parties do not agree on the amount within thirty days of entry of judgment, the Court will then set a hearing to fix the amount of the attorneys' fees.

Plaintiffs will prepare a proposed judgment in accordance with this opinion and submit it to opposing counsel for approval within one week. It should be submitted to the Court, with the approval of the defendant or with a statement of the grounds of its opposition, within three days thereafter. Upon submission of the proposed judgment, a judgment will be entered in favor of the plaintiffs.

---

7. *See,* Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) granting police officers immunity from civil damage suits if they act under a statute which they reasonably believe to be constitutional but which is later declared invalid.

8. We are mindful of the failure of the Telephone Company to take affirmative action to either secure an exemption from state law coverage or to seek a declaratory judgment as to the validity of the laws. *See,* Kober v. Westinghouse Corp., 325 F.Supp. 467 (W.D.Pa.1971). However, in the circumstances of this case, the Court does not feel that this failure to act affirmatively should render the Telephone Company liable for damages.