## STATE of Arkansas *v.* FAIRFIELD COMMUNITIES LAND COMPANY

76-46                                    538 S.W. 2d 698

### Opinion delivered July 19, 1976

*John Warndof,* for appellant.

*Warner & Smith,* by: *Lillard Cody Hayes,* for appellee.

*Amici Curiae, Youngdahl, Larrison & Agee,* by: *Catherine C.*

*Harris,* for Arkansas State AFL-CIO; *J. Gayle Windsor Jr.,* for Associated Industries of Arkansas, Inc.; *Smith, Williams, Friday, Eldredge & Clark,* by: *Bill S. Clark,* for The Arkansas Hospital Association, Inc.

GEORGE ROSE SMITH, Justice. This action was brought in the name of the State by the Director of Labor, on behalf of a number of the appellee's female employes, to recover overtime wages that assertedly should have been paid under Act 191 of 1915, as amended. Ark. Stat. Ann. §§ 81-601 *et seq.* (Repl. 1960). The appellee contends that the Arkansas statute is no longer valid, having been pre-empted, under the Supremacy Clause, by this provision in the Civil Rights Act of 1964:

> It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." [42 U.S.C.A. § 2000e-2.]

This appeal is from a judgment sustaining the appellee's position and dismissing the complaint.

At the outset it is insisted by the appellant, for the first time, that the circuit court did not have jurisdiction of the subject matter, because the proof does not show that the Civil Rights Act is applicable to the appellee, as an employer. That is, it is now shown that the appellee is engaged in an industry affecting interstate commerce, with 15 or more employees and a specified annual volume of business, as required by federal legislation.

That argument is not sound. Our circuit courts, unlike the federal courts, are tribunals of general jurisdiction with constitutional authority over all cases not within the exclusive jurisdiction of another court. Ark. Const., Art. 7, § 11 (1874); *Whittaker* v. *Watson,* 68 Ark. 555, 60 S.W. 652 (1901). Here the Director of Labor, as plaintiff, selected the forum himself. The circuit court unquestionably has prima facie jurisdiction of an action for the recovery of unpaid wages. The appellee merely pleaded the impact of the Civil Rights Act as a

defense to the action. If the plaintiff thought that the defendant was not entitled to invoke the Act, that issue should have been raised in the trial court. But the issue was not jurisdictional, because even if the defendant had not been entitled to invoke the Act the case would still have proceeded to judgment. For all we know, the plaintiff may have known that the defendant came within the Act and may simply have decided not to encumber the record with needless proof. Thus the appellant has no standing to raise the issue here, subject-matter jurisdiction not being involved.

Now, the merits. Our statute undoubtedly discriminates in favor of women on the sole basis of their sex. The employer must pay time-and-a-half overtime when the work day exceeds eight hours or the work week six days. Ark. Stat. Ann. § 81-601. There is no similar provision for male employees. It is fair to assume that an employer might therefore decide to hire a man rather than a woman, both being qualified. The appellee accordingly argues that our statute conflicts with the federal law, which prohibits any discrimination in hiring or in the terms of employment, on the basis of sex.

In answer to that argument the appellant relies upon the opinions in *Potlatch Forests* v. *Hays*, 318 F. Supp. 1368 (E.D. Ark. 1970), and *Hays* v. *Potlatch Forests*, 465 F. 2d 1081 (8th Cir. 1972), affirming the district court. Those cases upheld the Arkansas statute, upon the ground that the employer could comply with both the federal act and the state act simply by paying overtime to both men and women at the rate specified in the Arkansas statute. An essentially contrary view was taken in *Homemakers, Inc., Los Angeles* v. *Division of Indus. Welf.*, 356 F. Supp. 1111 (N. D. Cal. 1973), affirmed, 509 F. 2d 20 (9th Cir. 1974). Those courts held, as did the trial judge in the case at bar, that for a court to extend the benefits of the state statute by requiring men to be paid at a statutory scale applicable only to women would be an exercise of legislative rather than judicial power.

We are unable to agree with the *Potlatch* opinions, because we think they oversimplify the issue. In *Potlatch* both courts treated the Arkansas statute as a wages-and-hours law having as its sole purpose the payment of female employees at time-and-a-half for overtime. Neither opinion mentions other

aspects of the Arkansas law which we think to be of controlling weight.

The original 1915 statute had several provisions linking wages with the health of the female employees protected by the act. For example, the act created a three-member commission whose duty it was to adopt regulations making it certain that women would not be employed "at a lower rate or wages than will supply said female employees the cost of proper living, and safeguard their health and welfare." Act 191 of 1915, §§ 9 and 11. A 1935 amendment to the statute gave to a commission the power to issue, after a hearing, permits exempting from the statute females in executive or managerial positions. Act 150 of 1935; Ark. Stat. Ann. § 81-606. A 1943 amendment provided that no female could be employed for overtime of a permanent nature in excess of one hour a day without a permit from the Commissioner of Labor. Act 70 of 1943; Ark. Stat. Ann. § 81-601.

It must be emphasized that the constitutionality of Act 191 was upheld on the ground that it was a reasonable method of safeguarding the health of female employees. *State v. Crowe,* 130 Ark. 272, 197 S.W. 4, L.R.A. 1918A, 567, Ann. Cas. 1918D, 460 (1917). The majority and dissenting opinions in that case indicate clearly that the statute would not have been sustained had it merely regulated wages and hours, without regard to the health of the female employees.

In the intervening 60 years the pendulum has swung far in the opposite direction. The Supreme Court now holds that an act which discriminates between men and women is invalid as a denial of the equal protection of the law unless there is a reasonable basis for the distinction. *Reed* v. *Reed,* 404 U.S. 71 (1971). Hence Act 191 is now prima facie invalid, because with respect to many office and clerical jobs there is no sound reason for paying time-and-a-half overtime to women while denying it to men. Of course it follows that if the Arkansas act is now invalid, its benefits cannot simply be extended to male employees under the *Potlatch* rationale.

The Director of Labor advances two theories in his effort to have Act 191, as amended, continued in force. First, it was stipulated below that although the Department of Labor still

issues permits under the act, it no longer conducts hearings under §§ 81-606 and -607 to determine whether the particular female employee actually exercises executive or managerial authority. One short answer to this argument is that the discriminatory provision is still in the statute, whether the Department obeys it or not. A second answer is that the stipulation does not touch upon the equally questionable permit requirement in § 81-601, by which a permit must be obtained for any permanent overtime employment of a female in excess of one hour a day.

The Director's second suggestion is that the permit provisions and other discriminatory sections of Act 191, as amended, be held unconstitutional but separable, leaving in effect a simple wages-and-hours law that would benefit male employees under *Potlatch*. What we have already said pretty well answers this argument. Separability means that the legislature would have enacted the valid portion of the act even if it had known the rest to be invalid. But just the opposite is true here. In *Crowe* we sustained Act 191 only because it was considered to be a health measure rather than a mere regulation of wages as such. We could not with even a semblance of judicial integrity completely reverse our position and solemnly declare that the legislature would have adopted Act 191 as a mere wage regulation without regard to the very provisions that saved the statute from unconstitutionality at the time it was passed.

Affirmed.

Roy, J., dissents.

ELSIJANE T. Roy, Justice, dissenting. I disagree with the majority's opinion that the pertinent Arkansas statute is no longer valid. In my opinion, this issue was decided in *Potlatch Forests* v. *Hays*, 318 F. Supp. 1368 (E. D. Ark. 1970), and *Hays* v. *Potlatch Forests*, 465 F. 2d 1081 (8th Cir. 1972), affirming the district court. As noted in the majority opinion, those cases upheld the Arkansas statute upon the ground that the employer could comply with both the Federal act and the State act by paying overtime to both men and women at the rate specified in the Arkansas statutes.

The majority refused to follow the *Potlatch* cases and cited *Homemakers, Inc., Los Angeles* v. *Division of Indus. Welf.*, 356 F. Supp. 1111 (N.D. Cal. 1973), affirmed, 509 F. 2d 20 (9th Cir. 1974), as authority for holding the Arkansas statute invalid even though it differed materially from the California statute. Furthermore, the logic in the *Homemakers* decision is not as sound as the *Potlatch*[1] rationale, since to apply the *Homemakers* doctrine would thwart the purpose of both the State and Federal statutes. Here, the choice is between invalidating the Arkansas statute and lowering wages for female employees or holding the statute valid and equalizing benefits between male and female employees. Extension of wage benefits to men by virtue of the Federal enactment is consistent with the presumption of constitutionality as to both the Arkansas law and the Civil Rights Law of 1964.

The Eighth Circuit in its *Potlatch* opinion stated:

We agree with the District Court that *Congress expressly disclaimed any general preemptive intent in enacting Title VII,* and that the Arkansas statute can be held invalid only if it is in conflict with the Civil Rights Act. See, 42 U.S.C. §§ 2000e-7 and 2000h-4 [italics supplied].

Insofar as the Arkansas statute results in discrimination against men, we also agree with the trial court that conflict with Title VII can be avoided by requiring Potlatch to pay its male employees the same premium overtime rate which it is compelled to pay its female employees. As the trial court pointed out:

"* * *

"As far as Act 191 of 1915 [Ark. Stat. Ann. § 81-601] is concerned, an employer can comply with it and with the Civil Rights Act by paying daily overtime to both men and women, * * *. The Arkansas statute does not say that women must be paid more than men; it *simply says that they must be paid daily overtime*

---

[1]Normally if there is a conflict between the circuits on an issue of law Arkansas courts give preference to the Eighth Circuit Court of Appeals interpretation since Arkansas is one of the states in that circuit.

*without making a similar requirement as to men* [italics supplied]."

For compelling reasons the Arkansas overtime act should be preserved. It is a law which serves untold numbers of working people. Neither repeal of the law nor judicial legislation is necessary, but a fair and reasonable accommodation is warranted. Any conceivable disharmony between the State and Federal laws may be fairly accommodated by adopting the extension of benefits rule. There is nothing more fundamental to the welfare of the Arkansas citizenry than adequate wages, and nothing more essential than the law's even application in this vital area. To uphold the existing law would produce the proper balance by preserving its benefits while fulfilling Title VII's promise of fair employment practices.

Furthermore, there is ample precedent to support the judicial extension of benefits. *Frontiero* v. *Richardson,* 411 U.S. 677, 93 S. Ct. 1764, 36 L. Ed. 2d 583 (1973), and *Moritz* v. *Commissioner of Internal Revenue,* 469 F. 2d 466 (10th Cir. 1972).

Objections are also made to the Arkansas act on the grounds that the permit requirements are invalid and consequently the entire statute must fall. We do not agree with the conclusion of the majority that the permit provisions are not separable from the wage provisions of the statute.

It is a well established rule of law that if a statute is valid in part and invalid in part, then the valid part may stand provided it fairly answers the object or purpose of the passage of the law, and the deletion of the invalid portion will not make the statute meaningless.

The absence of the permit provisions certainly would not make the wage-hour part of the Arkansas overtime statute meaningless. The permit provisions do not affect the statute's substance, but are merely additional aids in enforcement of the wage provisions.

In *Brooks* v. *Wilson,* 165 Ark. 477, 265 S.W. 53 (1924), we said:

. . . [I]f any special provision of an act be unconstitutional and can be stricken out without affecting the validity of the residue of the act, it will be done, and the remainder of the act allowed to stand. *Cribbs* v. *Benedict,* 64 Ark. 555; *State* v. *New York Life Ins. Co.,* 119 Ark. 314; *State* v. *Woodruff,* 120 Ark. 406; and *Davis* v. *State,* 126 Ark. 260.

See also *Levy* v. *Albright,* 204 Ark. 657, 163 S.W. 2d 529 (1942).

Therefore, even if the permit provisions are invalidated the remainder of the statute would suffice to effect the object of having employees receive premium pay for overtime work.

Accordingly, I think the case should be reversed and remanded.