No. 83-458

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

_____

WILLIAM SLATER and ELSE SLATER,
d/b/a HEMINGWAYS'S RESTAURANT AND BAR,

Plaintiffs and Respondents,

-vs-

EMPLOYMENT SECURITY DIVISION OF THE
MONTANA DEPARTMENT OF LABOR AND
INDUSTRY, et al.,

Respondents and Appellants,

_____

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert H. Wilson, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

R. Scott Currey, Dept. of Labor & Industry,
Helena, Montana
D. Michael Eakin, Montana Legal Services,
Billings, Montana

For Respondents:

Hennessey Law Office, Billings, Montana

_____

Submitted on Briefs:  December 8, 1983

Decided:  February 9, 1984

Filed: FEB 9 1984

*Ethel M. Harrison*

_____
Clerk

Mr. Justice L.C. Gulbrandson delivered the Opinion of the Court.

Defendant Freddee Wessell appeals from the judgment of the District Court of the Thirteenth Judicial District, Yellowstone County, disqualifying her from receipt of unemployment benefits by reason of misconduct. (The Employment Security Division ceased to exist in September, 1981 and the proper state agencies in this action are the Department and the Board of Labor Appeals. Although the Department must be deemed a party in any action involving an appeal to district court of a Board of Labor Appeals administrative decision, see Section 39-52-2410, MCA, neither the Department nor the Board took an interest or actively participated in the appeal in this case.) For the reasons stated below, we reverse the judgment of the District Court.

Freddee Wessell was employed by Hemingway's Restaurant and Bar as a cocktail waitress for approximately five months prior to the end of July, 1982. William Slater is the owner of Hemingway's and his wife, Else, works as the floor manager. During Wessell's five months on the job, the Slaters had expressed some dissatisfaction with her job performance, particularly her occasional use of foul language in the presence of customers and her alleged proclivity for drinking while on the job. She was reprimanded in May of 1982 for these indiscretions. The parties disagree over whether she received similar reprimands for like behavior between May and July.

On July 20, a slight argument ensued between Else Slater and Wessell concerning the appropriateness of

punching in and out on the time clock during Wessell's workshift. Wessell apparantly told two of the bartenders that she was dissatisfied with her work and intended to quit. The bartenders relayed this information to Else, who in turn brought the matter to the attention of William Slater. Notice of intent to quit normally would be relayed directly to the floor manager by an employee. Nevertheless, William and Else decided to replace Wessell and either hire a new waitress or use a current employee to cover Wessell's next scheduled shift.

Wessell returned to work her next regularly scheduled shift July 20. When she arrived, she saw that a fellow employee was already covering for her. Else was not present to discuss the matter, so Wessell went directly to the executive chef, Bill Gleason. She asked Gleason whether she had been fired. He informed her that he did not know. A brief discussion then took place, during which Wessell indicated that she really didn't care if she was scheduled for work or not. Gleason suggested that her attitude was poor. At this point, Gleason maintains that Wessell used a four-letter word. He then told her that "you should just go home then. You just figure you are done, go home." However, he never told her that she was fired. Wessell left the premises and did not return, assuming that she no longer had a job at Hemingway's.

Wessell filed for unemployment benefits in early August. William Slater responded to notice of her application, alleging that she had been terminated for misconduct. Misconduct is a sufficient ground for disqualification from receipt of benefits. Section

39-51-2303, MCA. A claims examiner for the Department of Labor and Industry determined that there was no evidence of misconduct, and approved the application. Slatter appealed the decision. A hearing was held before a Department appeals referee on September 23, 1982. The Slaters, Gleason and Wessell testified at that time concerning the allegations of misconduct. The referee concluded that Wessell had been terminated for reasons other than misconduct, and affirmed the award of benefits.

A further appeal was taken to the Board of Labor Appeals. Following a hearing, the Board affirmed the findings, conclusions and decision of the referee. The Slaters appealed the Board decision to District Court pursuant to Section 39-51-2410, MCA, arguing that the Board decision was not supported by the evidence. After reviewing the transcript of proceedings before the referee and the Board, and considering briefs submitted by the parties, the District Court concluded that Wessell had been fired for misconduct, and disqualified her from receiving benefits. Wessell appeals from the District Court's judgment.

The only issue presented in this appeal is whether substantial evidence exists to support the decision of the Board awarding unemployment benefits to Wessell, such that the judgment of the District Court should be reversed. The relevant standard of review is set forth in Section 39-51-2410(5), MCA: "In any judicial proceeding under 39-51-2406 through 39-51-2410, the findings of the board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive and the jurisdiction of said court shall be confined to questions of law." The Montana

Administrative Procedure Act elaborates on the standard of judicial review:

> "The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>    (a) in violation of constitutional or statutory provisions;
>    (b) in excess of the statutory authority of the agency;
>    (c) made upon unlawful procedure;
>    (d) affected by other error of law;
>    (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;
>    (f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>    (g) because findings of fact, upon issues essential to the decision, were not made although requested."

Section 2-4-704(2), MCA (emphasis added). See also Kirby Co. of Bozeman, Inc. v. Employment Sec. Div. (Mont. 1980), 614 P.2d 1040, 37 St.Rep. 1255.

The Slaters maintain that Wessell was fired on July 20, 1982, when the chef told her to leave, supposedly because of her "bad attitude" and use of a four-letter word in the presence of a superior. Wessell insists that the decision to discharge her was made July 17, following her remarks to the bartenders about her intention to quit, and that misconduct could not be the basis for her termination. Although she concedes that her attitude about her employment, as expressed to the chef, was bad, she denies using a four-letter word in the chef's presence.

The testimony of the parties before the referee and

-5-

the Board was conflicting at times, and answers by the parties and witnesses to questions were sometimes equivocal. Nevertheless, we find substantial, credible evidence to support the Board's determination that Wessell was discharged for reasons other than misconduct.

The record reveals that Wessell notified the bartenders of her intention to quit. Although this did not constitute the usual notice to leave, the employers treated it as such and decided to hire a new waitress or assign a current employee to fill Wessell's shift. When Wessell next returned to work and found another waitress working her shift, she approached the chef, Bill Gleason. Gleason appeared to have some knowledge of the events before and after Wessell's argument with Else Slater. His testimony suggests that the employee covering Wessell's shift was there to replace her and that Wessell's employment would officially terminate at the end of a week, her "notice" to the bartenders having been treated as a week's notice. Gleason explained that he never specifically told Wessell that she was fired. Although the chef had authority to discharge employees, his testimony indicates that he had not received instructions concerning Wessell's termination. Considering the statements in the record as a whole, and according due respect to any decisions made by the referee and the Board concerning the weight of witness testimony and credibility of the witnesses, we cannot say that the ultimate decision of the Board was clearly erroneous.

The District Court's determination that Wessell was fired by the chef for misconduct can be supported only by selective treatment of certain aspects of the record.

Reaching that decision also required the court to weigh or interpret critical witness testimony and credibility differently than did the referee and the Board. Wessell admittedly may not be the ideal employee, but the referee and the Board concluded that the evidence, considered in its entirety, did not compel a conclusion that her discharge resulted from misconduct. Because the decision of the referee and the Board is based on a fair interpretation of the record, it should not be overturned.

The judgment of the District Court is reversed. The decision of the Board of Labor Appeals is reinstated.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices