No. 84-129

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

_____

L. WARREN STONE,

        Petitioner and Appellant,

    -vs-

BELGRADE SCHOOL DISTRICT NO. 44 and
MONTANA HUMAN RIGHTS COMMISSION,

        Respondents and Respondents.

*************************

        No. 84-130

BELGRADE SCHOOL DISTRICT NO. 44,

        Petitioner and Respondent,

    -vs-

THE HUMAN RIGHTS COMMISSION OF THE
STATE OF MONTANA, and L. WARREN STONE,

        Respondents and Appellants.

_____

APPEALS FROM:  District Court of the Eighteenth Judicial District,
               In and for the County of Gallatin,
               The Honorable Byron Robb, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

           Gregory O. Morgan argued, Bozeman, Montana
           Anne MacIntyre argued for Human Rights Commission,
           Helena, Montana

      For Respondent:

           Smith Law Firm; Chadwick Smith argued, Helena, Montana

                    Submitted:  November 13, 1984
                      Decided:  December 28, 1984

Filed: DEC 28 1984

*Ethel M. Harrison*

_____
                Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Two causes have been consolidated in this appeal for convenience. Both will be decided by this opinion. The appellant appeals from the judgment of the Eighteenth Judicial District, County of Gallatin, overruling a decision of the Human Rights Commission and dismissing the appellant's employment discrimination action against the Belgrade School District No. 44 and the Montana Human Rights Commission.

L. Warren Stone (Stone) filed a sex discrimination complaint with the Montana Human Rights Commission, August 15, 1977. Following an evidentiary hearing before a Commission Hearings Officer on September 30, 1981, a recommendation was made that the petition be dismissed. Shortly thereafter Stone filed an exception to the hearings officer's findings of fact that gender was not a BFOQ (bona fide occupational qualification) but not to the findings of facts as to Stone's damages. Before the Commission in August of 1982, Stone was found to have been discriminated against by the School District and the Commission ordered payment of lost salary based upon the hearings officer's findings. Stone petitioned for judicial review of the amount of damages (lost wages) given by the Commission and the School District petitioned for judicial review of the BFOQ issue. Stone's petition in cause No. 84-129 was denied on the grounds that he had failed to exhaust his administrative remedies. On the BFOQ issue, the District Court ordered the Commission to vacate its findings and dismiss the charge of sex discrimination against the School District. Stone appeals the denial of his petition for judicial review in cause No. 84-129. In cause No. 84-130, both Stone and the Commission

2

appeal from the order of the District Court in favor of the School District. We affirm the District Court in cause No. 84-130.

In July of 1977, L. Warren Stone applied for an available position of guidance counselor with Belgrade School District No. 44. Prior to 1976, the School District had only one full-time guidance counselor, a man, Mr. Pat Kramarich, who served the entire student body. The position for which Stone applied was for a second counselor position which had been created within the district. Five women and three men applied for the position.

In order to give students a choice when seeking counsel, the School District wished to hire a woman to fill the position. Appellant argues that he and the other male applicants were thus excluded from consideration for the position. A woman, Lois Kuni, was hired for the position. She was one of two women selected by the board for interview. Mrs. Kuni worked for the School District for two years when she was replaced by another woman, Sandra Amiel. Mrs. Amiel resigned at the end of the 1979 school year and was not replaced due to budgetary constraints. The decision to eliminate the counseling position, rather than a teaching position, occurred when the school district was forced to cut funding due to the failure of a mill levy within the district. Mrs. Amiel asked to be released from her 1980-81 contract and the School District elected to follow a "course of least resistance in deciding not to fill the vacant position." Since the 1979-80 school year, the only counselors available to the students in the school district have been men. A male teacher with counseling credentials was assigned

3

counseling duties for two of the seven periods of the school day to assist the full-time guidance counselor.

According to the testimony, students who did not wish to speak with a male counselor were allowed to go to female teachers. Since 1980, the School District has taken no further steps to insure counselors of both sexes were available to students.

At the time of the original hiring of Mrs. Kuni, the school board decided to balance the counseling staff by hiring a female counselor so the students of the district, both male and female, in both the junior and senior high school, would have a choice between a man and a woman counselor. Testimony indicated the School District wanted to hire a woman counselor for the benefit of those students who wished to discuss very personal and private matters with a counselor. Female students in the school indicated in a poll they would not visit a male counselor in some situations because of embarrassment or inhibitions. In addition, the School District wanted a female counselor on the staff to increase the effectiveness of the school's counseling service. The School District reasoned Stone was excluded from consideration for the position because he could not provide that desired balance.

Two counseling experts testified at the hearing before the hearings officer regarding the importance of hiring a male and a female counselor so that all students would have a choice. Dr. Al Suvak, who is a director of testing services at Montana State University, has worked at the counseling center at the University for some twenty years. He has a Ph.D. in counseling and is a licensed psychologist. Dr. Suvak testified success in counseling depends upon the

4

ability to relate to the persons being counseled and, therefore, if two counselors are to be employed for boys and girls, the counselors should be one male and one female. He testified different personalities are able to communicate better with one sex or the other and in his professional opinion it was proper for the Belgrade School District to hire a female for the position in 1977 as long as she was fully qualified.

Mr. Pat Kramarich also testified as an expert witness. Kramarich has a master's degree in counseling, has twelve years counseling experience at Belgrade schools and has special training in guidance and counseling. He confirmed Dr. Suvak's testimony that students, depending on their personality, are sometimes able to communicate and relate to one sex better than the other. Stone presented no testimony, expert or otherwise, to contradict the testimony of these two experts.

It should be noted the hearings officer for the commission, an assistant attorney general with expertise in the field of responsibility, found facts to support a conclusion that gender was a BFOQ for the position. The commission itself, acting on review, admits it upheld the hearings officer's findings of fact, but rejected only his conclusions as to a BFOQ.

The issue in cause number 84-130 is whether gender is a bona fide occupational qualification exemption to Montana's prohibition against sex discrimination in the context of hiring a second person to a school guidance counseling staff. The sole issue in cause number 84-129 is whether raising two issues of error in a petition for judicial review of an administrative order when only one of those issues was raised

5

in petitioner's written exceptions to the administrative examiner's findings constitutes a failure on the part of the petitioner to exhaust his administrative remedies.

We will first dispose of the issue raised in cause number 84-129.

Respondents argue Stone failed to exhaust his administrative remedy notwithstanding the language in his exceptions and accompanying proposed findings of fact and conclusions of law. Respondents argue Stone waived the question of damages by his failure to advise the commission of the action he wanted the commission to take with respect to those damages.

We find Stone did exhaust his administrative remedies because in his exceptions he incorporated by reference the issue of damages which was sufficient to bring the issue before the Commission. However, in view of our holding on the issue raised in cause No. 84-130, and in so finding for the School District, we do not change the ultimate decision of the District Court which reversed the Human Rights Commission's findings and conclusions.

The Montana Code Annotated statutes applicable to this matter are the following:

> "§49-2-303. Discrimination in employment. (1) it is unlawful discriminatory practice for:
>
> "(a) an employer to refuse employment to a person, to bar him from employment or to discriminate against him in compensation or in a term, condition or privilege of employment because of his race, creed, religion, marital status, color, or national origin or because of his age, physical or mental handicap, or sex when the reasonable demands of the position do not require an age, physical or mental handicap, or sex distinction . . .

6

"§49-2-101. Definitions. As used in this chapter, unless the context requires otherwise, the following definitions apply:

". . .

"(8) 'Employer' means an employer of one or more persons . . .

"§49-3-201. Employment of state and local government personnel.

"(1) State and local government officials and supervisory personnel shall recruit, appoint, assign, train, evaluate, and promote personnel on the basis of merit and qualifications without regard to race, color, religion, creed, political ideas, sex, age, marital status, physical or mental handicap, or national origin . . .

"§49-3-101. Definitions. As used in this chapter, the following definitions apply:

". . .

"(6) 'Qualifications' means such qualifications as are genuinely related to competent performance of the particular occupational task.

"§49-3-103. Permitted distinction. Nothing in this chapter (Chapter 3, Title 49) shall prohibit any public or private employer:

"(1) from enforcing a differentiation based on age or physical or mental handicap when based on a bona fide occupational qualification reasonably necessary to the normal operation of the particular business or where the differentiation is based on reasonable factors other than age; . . ."

These sections set forth the rules regarding discrimination in employment for all employers and allows for exception when the reasonable demands of the position require a sex distinction.

The appellant argues interpretation of what is meant by BFOQ or "reasonably necessary to the normal operation of a business" is a question of law, and that whether gender is a

7

BFOQ is a question of fact. He insists the District Court erred in making an unsupported assumption of fact that most students will communicate better with a counselor of their own gender about personal matters.

In addition, Stone argues the District Court may not substitute its discretion for that of the agency as to the weight of the evidence in questions of fact. Section 2-4-704, MCA. Stone further argues when a decision of an administrative agency "is based upon a fair interpretation of the record it should not be overturned." Slater v. Employment Security Division (Mont. 1984), 676 P.2d 220, 41 St.Rep. 243.

The appellant notes in his argument that for twelve years, prior to 1977, there had never been a female counselor and the School District's desire to hire a female counselor was not a necessity but rather only a preference. He argued:

> "It is clear that the only time the district considered a female counselor was when the enrollment required two counselors. Note, state accreditation requirements did not specify the sex of either counselor. This in and of itself is substantial evidence that a female counselor was not reasonably necessary to the normal operation of the business, but was in fact a preference."

Administrative Rules of Montana, ARM 24.9.1402 and 24.9.1407 and 29 CFR 1604.2(a) (1984), in pertinent part reads:

> "24.9.1402 Sex Discrimination as a reasonable demand of employment.
>
> ". . .
>
> "The following situations do not warrant the application of a bona fide occupational qualification exception:
>
> ". . .

8

"(iii) The refusal to hire an individual because of the preference of co-workers, the employer, clients or customers."

It is Stone's position the School District violated these provisions because it refused to hire a male counselor due to the preference of its clients.

Montana Human Rights Commission, as an appellant, adds to Stone's position by first citing section 49-2-303(1)(a), MCA, which states, "It is an unlawful discriminatory practice for . . . an employer to refuse employment to a person [or] to bar him from employment . . . because of his . . . sex when the reasonable demands of the position do not require . . . [a] sex discrimination . . . " The Commission then relies on section 49-2-402, MCA, which states: "Any grounds urged as a 'reasonable' basis for an exemption under any section of this chapter shall be strictly construed." For additional support the Commission relies on Dothard v. Rawlinson (1977), 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786, which held the BFOQ exception to the prohibition against gender based discrimination in employment is an "extremely narrow" one. See also Maine Human Rights Commission v. City of Auburn (Maine 1979), 408 A.2d 1253. Further the exception is a defense to otherwise unlawfully discriminatory conduct, thereby in the nature of an affirmative defense. Consequently, the employer shoulders the burden of proving by a preponderance of evidence the gender restriction falls within the purview of the statutorily-carved exception. See Percy v. Allen (Me. 1982), 449 A.2d 337; Laugesen v. Anaconda Company (6th Cir. 1975), 510 F.2d 307 at 313; Roberts v. Union Co. (6th Cir. 1973) 487 F.2d 387 at 389; and Fesel v. Masonic Home of Delaware Inc. (Del. 1978), 447 F.Supp. 1346

at 1350 (which characterizes the employer's burden as "very heavy") affirmed 591 F.2d 1334 (3rd Cir. 1979).

In Dothard, the United States Supreme Court considered the legality of employment policies which foreclose the hiring of women guards in a maximum security prison in Alabama. The prison officials argued successfully that the gender restriction was a BFOQ under 42 U.S.C.A. §2000(e)-2(e) because the condition of the institution reached the levels of "rampant violence" and a "jungle atmosphere." 433 U.S. at 334, 97 S.Ct. at 2729, 53 L.Ed.2d at 800. By virtue of her womanhood, the Court held, a female guard would be particularly vulnerable to physical assault, jeopardizing the security of the facility itself. In reaching this conclusion the Court invoked two criteria for determining whether, on that basis, a BFOQ existed. First "the essence of the business operation would be undermined by not hiring members of one sex exclusively" and secondly, the employer must have "reasonable cause to believe, that is factual basis for believing, that substantially all women would be unable to perform safely and efficiently the task that the job invoked."

Where the asserted justification for the discriminatory conduct is rooted in privacy interests of those with whom the complainant has contact, a third component is brought to bear on the assertion of the defense. This element is accommodation; the employer must demonstrate that it could not reasonably rearrange job responsibilities or engage in alternative practices so as to minimize the clash between the privacy interests of the inmates and the fundamental principle bearing discrimination in employment. See Gunther V. Iowa State Men's Reformatory et al. v. Gunther (1980), 612 F.2d

1079 at 1086, cert. denied at 446 U.S. 966, 100 S.Ct. 2942, 64 L.Ed.2d 825.

The Commission contends the School District did not factually establish the essential purpose of the school would be undermined by not hiring appellant Stone and the school did not have a factual basis for believing that all or substantially all men would be unable to perform the duties of the job of counselor as well as a woman.

Further, the Commission argues no factual basis exists to support the school's contention that ability to perform as a counselor is gender related: "A review of the evidence will demonstrate that the argument of the school district that ability to perform is gender related, is based on nothing more than stereotypic assumptions rather than on any factual basis."

Finally, the Commission argues the District Court applied an improper standard of review when it reversed the decision of the Commission. First, the Commission cites section 2-4-702(2), MCA, which outlines seven reasons a court may reverse a decision of an administrative agency. Then the Commission argues Northern Plains Resource Council v. Board of Natural Resources and Conservation (1979), 181 Mont. 500, 594 P.2d 297, controls. In that decision this Court held the burden on a party appealing from an agency decision is a substantial burden. See also Slater v. Employment Security Division (Mont. 1984), 676 P.2d 220, 41 St.Rep. 243. Based on the above opinion, it is the Commission's position that the District Court erred in reversing its decision.

We hold under section 49-2-303(1)(a), MCA, the employer can discriminate on the basis of gender when the reasonable demands of the position require sex discrimination. Pendery

11

v. City of Polson, HDC Case No. SEQ-882, where it was found that "under the Montana Human Rights Act, the school district must prove only that the hiring of a woman in this case is reasonably necessary because of the demands of guidance counselor positions, not that the essence of the entire business would be undermined if it does not hire her."

We note both respondent and appellant rely on Dothard, supra, and Langois v. Montana State Prison (Case No. 44232, 1980), where the courts recognize gender as a BFOQ when privacy rights of the students are at stake. The case authority supports the vacation by the District Court of the Commission's findings. Based on these cases, the respondent contends:

> "Intimate personal matters encompass more than exposing one's body. Discussing intimate, emotional or sexual problems with a guidance counselor is every bit as personal and private as exposing one's body. The counselor and the student must be able to discuss matters without inhibitions or reservations to get to the heart of the problem. Counseling without the freedom of expression is ineffective, and ineffective counseling is no better than no counseling at all. If students refuse to seek the help of a guidance counselor because of his sex, then the sex of the guidance counselor is 'crucial to successful job performance.'" Fesel v. Masonic Home of Delaware, Inc. (D.Del. 1978), 447 F.Supp. 1346, aff'd. (3rd.Cir. 1979), 591 F.2d 1334.

We note throughout the appellant's argument the appellants contend there was no factual support for the privacy interests of the students. The record indicates the respondent's long time male counselor took a poll to determine the attitude of female students toward male counselors and found thirty-eight percent of the girls would select a female counselor in all matters and ninety-two percent of the girls would sometimes select a female counselor. We find this poll, coupled with testimony of the

12

counselor and the expert from Montana State University constitutes adequate factual evidence of a compelling privacy interest.

In addition, we note the trial judge very carefully stated in his conclusions of law that the question whether gender is a BFOQ for the position of a second guidance counselor is an issue of law, and that the Commission's finding that gender was not a BFOQ for the second counselor position was improper. We agree.

In summation, we note the trial court not only found a compelling privacy interest in hiring a female counselor, but also that gender was a BFOQ for the position. We sustain both findings.

The decision of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

13

Mr. Justice John C. Sheehy dissenting:

The majority opinion is incorrect because it understates the burden of proof an employer must meet to establish a bona fide occupational qualification as an exception to the anti-discrimination laws. The Montana Human Rights Act is broader than Title VII of the Civil Rights Act, but the Acts are very similiar. This Court has held that reference to federal case law is useful and appropriate in considering questions arising under the Montana Human Rights Act. Snell v. Montana-Dakota Utilities (Mont. 1982), 643 P.2d 841, 845, 39 St.Rep. 763, 676. The test in this case ought to be whether the Belgrade Schools have established by the evidence that sex is a bona fide occupational qualification (BFOQ) for the school counselor. The school district in this case has not established that sex is a BFOQ.

There are three phases involved in a Title VII discrimination case. McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792, 802-804, 93 S.Ct. 1817, 1824, 1825, 36 L.Ed.2d 668, 677-679. A plaintiff must show (1) that he belongs to a protected class; (2) the employer sought applicants and he is qualified for the job; but, (3) despite his qualifications, he was rejected. Under phase two, the burden shifts to the employer to prove that his reason for rejecting the applicant was non-dicriminatory, that is, was a valid business reason. The burden then shifts back to the plaintiff to establish that the purported business necessity is pretext.

The school board here did not use a neutral standard in its employment policy. It sorted the applicants according to whether they were male or female. They interviewed women and not men. The school board failed however to introduce

evidence that only women and not men could act as counselors for high school girls. The majority opinion is written as though the school board had used the ability to counsel female students on personal problems as its standard. The evidence however completely fails to show this.

The District Court's decision cites a "higher authority" and "facts of life," but Title VII rejects such romantic paternalism. Rosenfeld v. Southern Pacific Co. (USCA 9 1971), 444 F.2d 1219. There is a need for evidence, which the employer must introduce and prove.

Here the school board should have proved that its business operation would be undermined by not hiring members of one sex exclusively, that there is reasonable cause to believe that all or substantially all men are unable to perform this particular job, and that the sex qualifications in this case is based on actual sexual characteristics and not stereotypical assumption. Dothard v. Rawlinson (1977), 433 U.S. 321, 333, 97 S.Ct. 2720, 2728, 2729, 53 L.Ed.2d 786, 799, 800.

Therefore I would reverse for two reasons: (1) The school board's assumption that only females could act as counselors for females students is not even facially neutral; (2) the school board failed entirely to meet its burden of proof to establish that the essence of counseling would be undermined by the hiring of a male counselor for female students. Under (1) the school board discriminated without more. Under (2) it failed to establish a BFOQ.

John G. Sheehy
———————————————
Justice

Justice Frank B. Morrison concurs in the dissent of Justice Sheehy.

Justice Daniel J. Shea dissents and will file a written dissent later.